Reversed and dismissed.

### R. Stockton v. The State.

A mistake in the initial letter inserted between the christian and the surname of a party alleged in an indictment to have been assaulted, may be disregarded, and it is not error for the court to allow evidence to be introduced on the trial of an assault committed upon the person named by the true name and initial, or, it seems, without reference to the initial at all.

Where the indictment alleged the name of the party assaulted to be Nathaniel C. Black, the court properly instructed the jury that if they believed from the evidence that Nathaniel D. Black was the same person who was described in the indictment by the name of Nathaniel C. Black, that it would be sufficient, and not a material variance.

Where the circumstances attending a breach, or threatened breach of the peace, are such as to justify a peace officer in arresting a party concerned in it, if such party within striking distance draw back a knife and order the officer who is advancing to arrest him to stand, which order is obeyed, he is guilty of an assault.

A person in the exercise of his legal right of self-defence, will be guilty of an assault, although not the first aggressor, if the means resorted to by him be extreme, and the violence used upon his assailant be excessively beyond that degree of force necessary to repel the aggression.

The right to bear arms does not imply a right to use them to repel a slight assault or trespass. The serious character of the aggression alone can produce the necessity, and hence alone, his right to make use of them to defend himself.

APPEAL from Cherokee. Tried below before the Hon. R. A. Reeves.

Indictment for an assault with intent to murder Nathaniel C. Black. It was proved that there was a quarrel or difficulty between the defendant and one Love in the town of Jacksonville; occasionally loud talking and quarreling.

Black, a constable, arrested Love, and advanced towards the defendant to arrest him, who had in his hand a butcher or carving knife, which he raised in a striking position, and commanded Black to "stand back," or "keep off." Black stepped back. Defendant neither struck at, nor offered to strike or stab him. The defendant objected to testimony to establish any assault upon Nathaniel D. Black, because the indictment charged the assault to have been committed upon Nathaniel C. Black. The objection was overruled.

Black was at one time within striking distance of the defendant, and whilst he was talking to defendant, Love threw a piece of iron at the latter, striking him upon the shoulder.

The defendant asked the court to instruct the jury that no conviction could be had for an assault on Nathaniel D. Black. Instead of which, however, the court charged the jury that if they believed from the evidence Nathaniel D. Black to be the person who is described in the indictment by the name of Nathaniel C. Black, it would be sufficient.

The defendant asked the court to charge the jury that in order to find the defendant guilty of an assault, they must believe that at the time he raised the knife, it was his immediate intention to strike Black. Which the court gave, with this qualification, "and that he was prevented from striking, by Black's retreating; and if that was the case, the defendant would be guilty of an assault."

The defendant was found guilty of a simple assault, and fined twenty dollars.

The defendant assigned as error the charges given by the court to the jury, and the refusal of the charges asked by him to be given.

*Donley & Anderson*, for the appellant.

*Attorney-General*, for the State.

ROBERTS, J.—The defendant was indicted for an assault with intent to murder upon Nathaniel C. Black. It was proved that the assault was made upon Nathaniel D. Black. He was convicted of a simple assault. The evidence was objected to and the objection overruled, and the court was asked to charge that the defendant cannot be convicted in this case for an assault on Nathaniel D. Black; which the court did not give, but instead thereof instructed the jury that, if they believed from the evidence that Nathaniel D. Black was the same person who is described in the indictment by the name of Nathaniel C. Black, it would be sufficient.

The general rule is, that the name of the person upon whom an assault is committed must be accurately set out in the indictment, and that if there should be a variance between the name as alleged and as proven on the trial, the defendant should be acquitted. (Amer. Crim. Law., Wharton, 260; 1 Chitty's Crim. Law., 216.) Here the only variance is between the initial letter, inserted between the christian and sir-name. There are two cases decided by this court in which it was held that a mistake in an initial letter of this sort may be wholly disregarded in judicial proceedings. (McKay *et al.* v. Speak *et al.*, 8 Tex., 376; The State v. Manning, 14 Tex. R., 402.) "An initial letter cannot be thus used in composition; because it separately expresses no word, and consequently nothing that can pass for a name or a part of a name." (Bratton v. Seymour, 4 Watts Rep., 330.) This proceeds on the ground that the insertion of a middle letter which does not necessarily or certainly stand in the place of, or represent

any particular word, is no part of the name by which the party is designated. It is an idle addition that may be disregarded. It is not presumed to mislead any one as to the person described. And unless it in fact have that effect, a mistake in it can produce no injury. Hence the court instructed the jury that if they believed from the evidence that Nathaniel D. Black was the same person who is described in the indictment by the name of Nathaniel C. Black, it would be sufficient. This gave the defendant the full benefit of requiring the jury to be satisfied that Nathaniel D. and Nathaniel C. indicated one and the same person, and thereby guarded him against the consequence of a possible mistake, should there be two persons named Nathaniel Black. There was no effort made to show by evidence that there were two such persons, or any other facts which would render the middle letter necessary practically to designate the particular person assaulted. We do not think that this point presents any ground of error in the court below.

Other reasons have sometimes been given for disregarding a middle letter, or even a middle name, that has been inserted or omitted. And there is some diversity of opinion upon questions in this connection, which facts of this [kind—REPORTER,] do not require to be here noticed. (Franklin v. Talmadge, 5 Johns, 84; 2 Cowen, 464; 14 Barbour, 307; 1 Raymond, 562; 1 Coke upon Lit., "Fee Simple," 3 a; 1 Pick. 387; The State v. Hughes, 1 Swann's (Tenn.) R., 261; Am. Crim. Law (Wharton) 238, 243, 251; 19 Ohio, 423; 10 New Hamp., 347.)

The defendant was engaged in a disturbance of the quiet of the town of Jacksonville by quarreling and loud talking. Black being a constable advanced upon him to arrest him, when he drew back a large knife in a striking position and ordered the constable to stand back, which he obeyed. It may be doubtful whether such a disturbance was not shown by the proof as justified a constable, who was present, in arresting the defendant. (Penal Code, Art. 382; Code Crim. Pro., 74.) In case he was justified in the attempted arrest, the defendant was clearly guilty if the constable was in striking distance. And that the jury were warranted in believing from the fact that the constable immedi-

ately stepped back, it being expressly shown that at one time he was in striking distance.

But admitting that the defendant was not then doing anything, nor was about to do anything which justified the constable in arresting him, and that therefore he had a right to stand on his own defence, and prevent himself from being arrested by the constable (who had no warrant,) or by any private person, the jury were still authorized to find him guilty of an assault from the dangerous and unnecessary and improper means which he used to protect himself from the arrest. If the constable, without any lawful authority or just cause, had arrested him, it would have included an illegal assault, which he would have had a right to prevent instantly himself. But by what means? Could he do it by an assault with a deadly weapon? It is not shown that such extreme means were necessary or proper on that occasion. His antagonist had already been arrested, and it does not appear that the constable either had in possession or was attempting to procure or use any weapon of any sort in making the arrest. Our code provides that any one may protect himself from all unlawful assaults or other forcible injuries, and it also prescribes the manner in which he may do it. "Where violence is permitted to effect a lawful purpose, only that degree of force must be used which is necessary to effect such purpose." (Penal Code, 484.) "The resistance which the person about to be injured may make to prevent the commission of the offence, must be proportioned to the injury about to be inflicted. It must be only such as is necessary to repel the aggression." (Code Crim. Pro., 69 and 70.) This is in entire harmony with the spirit of the common law. Although a man has a right to bear arms of the most deadly character in his own defence, it does not therefore follow that he has a right to defend himself with them, and by using them on all occasions, however trivial the attempted infringement of his rights. Under ordinary circumstances he could have no right to use them to repel a slight assault or trespass. The serious character of the aggression alone can produce the necessity, and hence alone his right to make use of them in defending himself. The law does not permit the lives of individuals to be thus hazarded. If A. and

B. are engaged in a quarrel, and A. assault B. with his fist, without any intention of serious injury being manifested, and B. to prevent the attack, present a pistol loaded and cocked at the bosom of A., intending to shoot him if he struck him, this would be an assault in B. ordinarily.   Because he had no right, in the first instance, to resort unnecessarily to such extreme, hazardous and reckless means of defence against a slight attack.  It is entirely disproportioned to the threatened aggression.  (The State v. Morgan, 3 Iredell's Law Rep., 186.)  It is true that circumstances of threatened difficulty with dangerous weapons in the hands of others, may surround a party so that it would be unsafe for him to suffer an unlawful arrest by a constable which might place him at disadvantage with his antagonists by disarming him, and he might not be in a situation in his emergency to await the delay of a milder means of self-protection.  In any such case the facts which constituted the emergency must be shown to justify the immediate use of such deadly weapons.  They are not shown in this case to have existed at the time the knife was used by the defendant.

It is shown that Love, his antagonist, struck him on the shoulder with a piece of iron while he was talking with the constable.  Still it is not shown but what his drawing the knife upon the constable, and consequent resistance, was the sole cause of this attack upon him.

Judgment affirmed.