Appellant prosecutes this appeal from a conviction of murder in the first degree, with the death penalty assessed.
1. When the cause was called for trial, he applied for a change of venue, based upon both grounds mentioned in the statute. To this application was attached an exhibit — a newspaper account of the actions of a mob which sought to take defendant from custody for the purpose of hanging him. The controverting affidavit filed by the State was sufficient, both *Page 635 
as to form and substance; wherefore the court did not err in overruling defendant's exceptions to the same. Willson's Crim. Stats., secs. 2209, 2210. The application was refused, and defendant excepted, but the evidence adduced on the trial of the issues involved in the motion is not incorporated in the bill of exceptions; and it is therefore insufficient to authorize, on appeal, a revision of this ruling of the court. Code Crim. Proc., art. 584; Blackwell v. The State, 29 Texas Ct. App. 194[29 Tex. Crim. 194]; Lacy v. The State, 30 Texas Ct. App. 119[30 Tex. Crim. 119]. Attaching the newspaper account to the application as an exhibit does not authorize its consideration as evidence in support of such application. Lacy v. The State, Id.
2. Defendant sought a continuance; first, because there existed a prejudice so great and a combination of influential persons so strong, that he could not obtain a fair and impartial trial in Dallas County; and second, for the testimony of one Brown, by whom he "expected to prove, that a few nights prior to the homicide several policemen with others came to his house in the city of Dallas, and then and there talked with said Brown, and inquired of said witness the whereabouts of defendant, and said they proposed to arrest defendant, and that he would then be killed by some man who they then named to said witness." The application fails to show diligence to secure the attendance of the witness. Defendant was served with a copy of the indictment on June 9, and his trial occurred July 14 following. The process for the witness is not attached to the motion, nor is it inserted in the bill of exceptions, and neither states the date of its issuance, nor is it shown that further process was not required. But if diligence be conceded, the allegations are too vague and indefinite. Neither the name of defendant's proposed slayer, nor that of any of the parties who visited his house, is given. Nor would the testimony as set out be admissible. General statements will not suffice, nor will mere inferences or indefinite allegations. The facts expected to be proved must be stated definitely. Miller v. The State (Texas Crim. App.), 20 S.W. Rep., 1103; Williams v. The State, 10 Texas Ct. App. 114[10 Tex. Crim. 114]; Grissom v. The State, 8 Texas Ct. App. 386[8 Tex. Crim. 386]; Thomas v. The State, 17 Texas Ct. App. 437[17 Tex. Crim. 437]; Mitchell v. The State, 1 Texas Ct. App. 195[1 Tex. Crim. 195].
3. This homicide occurred on May 24. The State, over defendant's objection, was permitted to prove that an affidavit was prepared on May 23, and filed on May 25, charging defendant with the offense of slander; that the acting chief of police was informed of that fact; that he instructed the police force to arrest defendant; that in obedience to this order he was arrested, and this constituted the only authority for his arrest. This testimony was objected to because irrelevant and incompetent. The effect of this testimony was to show the arrest without warrant, and thus it tended to maintain the defensive theory of illegal arrest, and for this purpose was legitimate, and did not, because offered by the prosecution, become incompetent. *Page 636 
4. The affidavit charging defendant with the offense of slander was also admitted in evidence. The slander charged imputed to the female mentioned a want of chastity of a most revolting nature. The contents were hardly germane to any issue in the case, in the absence of evidence bringing home knowledge to defendant of the existence of the affidavit, and we are not prepared to say that it may not have prejudiced defendant in the minds of the jury. The court, however, subsequently withdrew the affidavit from the consideration of the jury, and instructed them verbally, as well as in writing, to disregard it as evidence in the case.
The effect of withdrawing and excluding testimony erroneously admitted, which was or may have been prejudicial in its nature and tendency, has been the subject of much discussion in the courts, and the decisions are not harmonious upon the question. The weight of authority, however, seems to be that such withdrawal cures the error, and such has been the opinion entertained by this court. Sutton v. The State, 2 Texas Ct. App. 342[2 Tex. Crim. 342]; Marshall v. The State, 5 Texas Ct. App. 273[5 Tex. Crim. 273]; Phillips v. The State, 22 Texas Ct. App. 139[22 Tex. Crim. 139]; Nalley v. The State, 28 Texas Ct. App. 387[28 Tex. Crim. 387]. See also, State v. Fowler, 13 R. I., 661; Thomp. Trials, secs. 715, 722, 723, and notes.
In Sutton's case, supra, it was said: "But conceding the court erred in admitting this testimony, the error, if in fact any was committed, was corrected by the court afterwards withdrawing it from the considertion of the jury." This ruling has been approved in subsequent cases, and the doctrine uniformly upheld, that when improper evidence has been admitted over objection, it is the proper practice, and may become the duty of the court, to exclude or withdraw it from the jury, and instruct them to disregard it in finding their verdict. Authorities above cited; Willson's Crim. Stats., sec. 2514.
To hold otherwise would be to sanction the doctrine that the court could not cure any error into which it may have fallen by mistake or inadvertence, and thus render it helpless to rectify errors committed, and the trial a mockery and a farce. We call not sanction such a doctrine. It is not intended here to hold that cases may not arise in which the withdrawal of testimony would not cure the error committed in admitting same; for it may occur that such evidence was of such a prejudicial character as to so influence the jury against the defendant that he would be deprived of a fair and impartial trial. We do not think, however, this evidence of that character.
5. The State proved by Arnold, that about three weeks prior to the killing, defendant, speaking of his previous arrests by deceased and other policemen, said "that every officer who gave him bond or took his recognizance, it was all right, and he would be there the next morning; but if he would not be allowed to give bond, and had a gun with him, he would *Page 637 
be damned if the fight didn't, begin right there. He made similar statements to me repeatedly in the past year." Objections were urged, that this testimony was irrelevant, showed no malice towards deceased, and tended to confuse and mislead the jury. Deceased was a policeman, was specially mentioned by defendant in connection with his previous arrests and conditional threats, was connected with the arrest of defendant just preceding the homicide, and was seeking his arrest at the time he was shot and killed. The evidence was directly pertinent to the issue of malice and motive. Campbell v. The State, 15 Texas Ct. App. 506[15 Tex. Crim. 506]; McKinney v. The State, 8 Texas Ct. App. 626[8 Tex. Crim. 626]; Hubby v. The State, Id., 597; Willson's Crim. Stats., secs. 1043, 1044.
6. While under arrest, and within fifteen minutes after the homicide, being informed of Brewer's death, defendant told some one in the crowd near him to "Tell Sam Miller to come down here; by God, I have got my man!" It was objected, that defendant was under arrest, was not cautioned or warned, and was in fear of his life. The testimony was res gestæ and properly admitted. Lewis v. The State, 29 Texas Ct. App. 201[29 Tex. Crim. 201]; Fulcher v. The State, 28 Texas Ct. App. 465[28 Tex. Crim. 465]; Castillo v. The State, ante, p. 145; Powers v. The State, 23 Texas Ct. App. 42[23 Tex. Crim. 42].
7. Error is assigned because the court charged the jury as to the law applicable to murder in the first and second degrees, and refused to confine their consideration of the case to the issues of self-defense and manslaughter. In this connection the evidence discloses that defendant, about three weeks prior to the homicide, and on several previous occasions, alluding to his "many arrests," said that deceased and other policemen had given him bail, but if, upon future arrests, they should refuse to take his bond or recognizance, he would have his pistol and "he would be damned if a fight did not commence, and he would never be carried to the jail alive." When arrested at the railroad depot, shortly before the homicide, he assented and willingly accompanied the officers to Lacy's saloon, on the opposite side of the street. Deceased participated in this arrest, but did not accompany the parties to the saloon, and was not further connected with his detention. While in the saloon, Beard, one of the policemen making the arrest, having telephoned for the patrol wagon, refused defendant's request for bail because he "did not know exactly what the charge against him was, and Ed Cornwell (chief of police) had told him to bring him to the police station," and also said to defendant, "Go and see Ed, and it will be all, right."
Anticipating no trouble, Beard left the defendant in the saloon, in the custody of another policeman, Brandenberg, who, upon two similar requests, refused to release defendant on bond. Upon the last refusal, and while Brandenberg was engaged in conversation with another party, defendant drew his pistol, leveled it at the officer's face, remarking as he did so, "By God, here's my bond," or "By God, I will have bond," *Page 638 
and jumped or backed out of one door as the officer went out of another. Just as they emerged from the doors, defendant shot at Brandenberg, who then drew his pistol. Defendant began retreating and firing, and as he fired the third shot, Brandenberg fired at him. After the firing began, deceased, who was standing some distance away, started in pursuit of defendant for the purpose of arresting him; and as he approached, defendant turned upon, and, supporting his right arm with his left, fired at and killed him. He then continued to retreat and shoot at Brandenberg until his pistol was entirely discharged. In a few moments he was arrested, and from him was taken a pistol and twenty-two cartrides, with six of which he was seeking to reload his pistol. Deceased's pistol was discharged as he fell or was falling, and the evidence is conflicting as to whether he fired at defendant prior to being shot. Shortly after his arrest, upon being informed of Brewer's death, defendant said to a bystander, "Tell Sam Miller to come down here; by God, I have got my man?" Sam Miller and defendant are brothers. The evening train had just arrived and was at the depot. The street was filled with people, and the firing occurred near the depot, one ball striking the engine.
Where a party is illegally detained he may, in a proper manner, regain his liberty, and a killing under such circumstances may be reduced to manslaughter, or self-defense. But if the killing be for any other cause, as ill-will or malice, it will be murder; or if more force than necessary be used, or a deadly weapon be resorted to unnecessarily in the first instance by the arrested party, this would constitute him the aggressor. Code Crim. Proc., arts. 83, 84; Stockton v. The State, 25 Tex. 776. If his intention was to kill or do serious bodily harm, the killing would be upon express malice. He is not required to submit to illegal arrest, but may demand the warrant or proper authority, and in its absence repel force by force, provided the force does not exceed prevention and defense. Such force, however, can not be disproportionate to the injury. The right to repel force by force continues until the person attempting the illegal arrest presses forward with such violence that the person defending is obliged to choose between three things; to retreat, to surrender, or the death of his adversary. If the force used be disproportionate to the injury about to be inflicted, self-defense is eliminated; and if it be attributed to any other cause than resistance to the illegal arrest, such arrest can not be looked to as a mitigating circumstance. It has been said that "In such cases it may be well deserving of consideration whether the first inquiry ought not to be whether the act done was caused by illegal apprehension. If the act done arose from other causes, and had no reference to the illegal arrest — as if it arose from previous ill-will — it would seem that the illegality of the arrest ought not to be taken into consideration, because it was not the cause of the act, and therefore could not be truly said to have offered any provocation for it." 1 Am. and *Page 639 
Eng. Encyc. of Law, 573, and note; see, also, Ex Parte Sherwood, 29 Texas Ct. App. 334[29 Tex. Crim. 334]; Miller v. The State (Texas Crim. App.), 20 S.W. Rep., 1103.
The question at last is, what cause, reason, or motive actuated the defendant in committing the homicide ? It is the settled law of this State, that in arriving at a correct conclusion in homicide cases, the killing should be viewed from the defendant's standpoint; that is, to ascertain as nearly as possible, from the evidence, the reasons and motives which moved or induced the accused to do the killing. It has been held, that an unlawful arrest is esteemed, in law, a great provocation. If it be conceded that such provocation constitutes "adequate cause," under our statute, then, in order to reduce the killing to manslaughter, "sudden passion" must have existed in the mind of the slayer at the time of the homicide; otherwise, the killing would be murder. Massie v. The State, 30 Texas Ct. App. 64[30 Tex. Crim. 64]; Ex Parte Jones, ante, p. 422; Ex Parte Sherwood, 29 Texas Ct. App. 334[29 Tex. Crim. 334]; Miller v. The State, 20 S.W. Rep., 1103. Such provocation, in the absence of "sudden passion," may become evidence of a most cogent character and force, showing malice. (Same authorities.) Again, if there exists a provocation unknown to the accused at the time of the homicide, this would not suffice to reduce the killing below murder. There must be a concurrence of "adequate cause" and "sudden passion," as defined by our statute, to reduce a felonious homicide to the degree of manslaughter.
As was said by Judge Hurt in Dyson's case, 14 Texas Court of Appeals 454[14 Tex. Crim. 454]: "When the prisoners have been sometime in custody, and the informality of the warrant under which they were held was unknown to them, and they deliberately planned and carried out an attack which resulted in the death of one of the officers, this was held murder, and not manslaughter." And again, in Sherwood's case: "Because without such knowledge the provocation could have no effect upon him whatever, and hence without such knowledge it is absolutely certain that his passions, if any, were not caused by this provocation." 29 Texas Ct. App. 334[29 Tex. Crim. 334]. This court has further held, that where a party, "expecting an attempt will be made to arrest him illegally, deliberately prepares arms for immediate use, and calmly and deliberately determines to kill the person attempting the illegal arrest, and upon his appearance for that purpose does kill him, such killing would be upon express malice; and to hold the slayer guilty upon express malice would not only be law, but common sense and justice" Miller v. The State, 20 S.W. Rep., 1103. Illegal or attempted illegal arrest, unlawful restraint of liberty, and a wanton, unnecessary, and unjustifiable exercise of legal power in making arrest, stand upon the same legal plane. Ex Parte Sherwood, 29 Texas Ct. App. 334[29 Tex. Crim. 334]; Miller v. The State, 20 S.W. Rep., 1103; Horr. T. Cas. Self-Def., 715. *Page 640 
In this case defendant had been "many times" arrested by deceased and other policemen of Dallas, had always submitted, because bail was accorded, and would do so again upon the same conditions, but should this be refused, he had deliberately resolved, and so notified the Officer, to bring on it deadly conflict, and one in which his own or the life of the officer was to be sacrificed. In this connection, and upon this stated condition, the life of deceased had been threatened by defendant; and when the opportunity came he was armed, and brought about the conflict. The drawing and presenting his pistol was an unnecessary and an illegal act, and disclosed his purpose to execute his previous threat. He was in no danger from the officers, or any other source, and could have secured bail by accompanying the officers to the police station. Deceased was not connected with the difficulty in the saloon, and was seeking defendant's arrest when shot and killed by him. Defendant was violating the law of the State in carrying the pistol, presenting it, and shooting at Brandenberg, as well as subsequently firing it in the street; and he was aware that it was incumbent upon deceased, as an officer, to arrest him for these offenses, and a duty which if left unperformed would subject the officer to a heavy penalty and a severe punishment.
But there seems to have been another reason operating upon defendant's mind, inciting him to take the life of Brewer, as evidenced by the deliberate manner of shooting him, as well as the message sent his brother immediately after the homicide. That message conveys the idea that deceased had been the subject of discussion between the brothers; that they understood each other in regard to defendant's feelings and intentions toward deceased; and the inference is strong, if not conclusive, that the brother would know, without mentioning his name, that deceased was the "man" referred to in the message. The evidence does not sustain the position that defendant knew he was illegally arrested, nor was that matter ever referred to by him. He voluntarily and willingly submitted to the arrest, said it was "all right," and at no time questioned the officers' right to make the arrest, nor demanded their authority for doing so, but only claimed the right to give bond, and thus not only recognized their right to make the arrest, but manifested as well his belief that his arrest was legal. His mind was unmoved by reason of the arrest. He believed it legal, and willingly remained in custody for ten or fifteen minutes, and until bail was refused the third time; and reviewing his acts in the light of all the facts, he did so, waiting for the opportune moment to shoot, either because he was denied bail on the spot, at the instant, and on the terms fixed by himself (not because he was refused bail at all events), or because there existed in his mind a purpose to kill, formed prior to the arrest, as indicated by facts anterior to, occurring at the time of, and subsequent to, the homicide. Being the aggressor, he brought on a conflict in which he knew or believed life must be sacrificed, *Page 641 
and from that instant till the firing ceased his attitude in the difficulty never changed.
Viewing this transaction from the defendant's standpoint, as evinced by his acts and declarations, it appears that he had frequently been arrested by deceased and other policemen; that he had heretofore been admitted to bail; that he anticipated refusal of bail, if again arrested; that he threatened to be, armed, and bring on a combat with deadly weapons, in case he was not permitted to give, bond when arrested; that the legality or illegality of the anticipated arrest had no connection with his threats; that he assented to his arrest, and did not inquire the cause, or demand the authority of the officers making it; that he deliberately armed himself with a heavy-caliber pistol, as he had threatened; that he also secured and carried about his person twenty-two extra cartridges; that thus armed, he went to the place at which deceased and the other policemen were on duty on the occasion of the homicide; that he was immediately arrested by the policemen; that he demanded and was refused bail shortly after his arrest; that he drew his pistol and fired at Brandenberg when bail was refused; that he turned from tiring tit Brandenberg and fired at deceased; that he was deliberate in his manner of shooting at and killing deceased; that be sent the message, "Tell Sam Miller to come down here; by God, I have got my man!" to his brother just after the homicide; that he had prior unkind feelings and ill-will towards deceased; and that he was reckless and desperate of human life in his conduct throughout the difficulty. The court, therefore, did not err in charging the law applicable to murder of both degrees, and in refusing to confine and restrict the deliberations of the jury to manslaugher and self-defense.
We deem it unnecessary to discuss the other questions relating to the charge. Under the principles announced in the cases of Ex Parte Sherwood and Miller v. The State, above cited, we are of opinion that the judgment should be affirmed, and it is so ordered.
Affirmed.
Simkins, J., concurs. Hurt, P. J., dissents. *Page 642 
[EDITORS' NOTE: THIS PAGE IS BLANK.] *Page 643 
 APPENDIX. CONSTITUTION, ARTICLE V — JUDICIAL DEPARTMENT.
Amendments to Judiciary Article V of the State Constitution, adopted September 22, 1891, which relate to the Court of Criminal Appeals:
SEC. 4. The Court of Criminal Appeals shall consist of three judges, any two of whom shall constitute a quorum, and the concurrence of two judges shall be necessary to a decision of said court; said judges shall have the same qualifications and receive the same salaries as the judges of the Supreme Court. They shall be elected by the qualified voters of the State at a general election, and shall hold their offices for a term of six years. In case of a vacancy in the office of a judge of the Court of Criminal Appeals, the Governor shall fill such vacancy by appointment for the unexpired term. The judges of the Court of Appeals who may be, in office at the time when this amendment takes effect shall continue in office until the expiration of their term of office under the present Constitution and laws as judges of the Court of Criminal Appeals.
SEC. 5. The Court of Criminal Appeals shall have appellate jurisdiction coextensive with the limits of the State in till criminal cases of whatever grade, with such exceptions and under such regulations as may be prescribed by law. The Court of Criminal Appeals and the judges thereof shall have the power to issue the writ of habeas corpus, and, under such regulations as may be prescribed by law, issue such writs as may be necessary to enforce its own jurisdiction. The Court of Criminal Appeals shall have power, upon affidavit or otherwise, to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction. The Court of Criminal Appeals shall sit for the transaction of business from the first Monday in October to the last Saturday of June in cacti year, at the State, capital and two other places (or the capital city) if the Legislature shall hereafter so provide. The Court of Criminal Appeals shall appoint a clerk for each place at which it may sit, find cacti clerk shall give bond in such manner as is now or may hereafter be required by law, and who shall hold his office for four years, unless sooner removed by the court for good cause, entered of record on the minutes of said court.
SEC. 28. Vacancies in the office of judges of the Supreme Court, the Court of Criminal Appeals, the Court of Civil Appeals, and District Courts, shall be filled by the Governor until the next succeeding general election, *Page 644 
and vacancies in the office of county judge and justices of the peace shall be filled by the Commissioners Court until the next general election for such offices.
 AN ACT TO ORGANIZE THE COURT OF CRIMINAL APPEALS.
The act organizing the "Court of Criminal Appeals," and defining the jurisdiction thereof, etc., approved April 13, 1892, is as follows:
SECTION 1. Be it enacted by the Legislature of the State ofTexas: That the Court of Criminal Appeals shall consist of three judges, any two of whom shall constitute a quorum, and the concurrence of two judges shall be necessary to a decision of said court. Said judges shall have the same qualifications and receive the same salaries as judges of the Supreme Court.
SEC. 2. The judges of said court shall be elected by the qualified voters of the State at a general election, and shall hold their offices for a term of six years.
SEC. 3. At the first, session of said court after the first, election of the judges thereof under this act, the terms of office of said judges shall be divided into three classes, and the justices thereof shall draw for the different classes. The judge who, shall draw class No. 1 shall hold his office two years from the date of his election and until the election and qualification of his successor; the judge drawing class No. 2 shall hold his office for four years from the date of his election and until the election and qualification of his successor; and the judge who may draw class No. 3 shall hold his office for six years from the date of his election and until the election and qualification of his successor; and thereafter each of the judges of staid court shall hold his office for six years, as provided in the Constitution of this State.
SEC. 4. In a case of a vacancy in the office of a judge of said court, the Governor shall fill the vacancy by appointment for the unexpired term. The judges of the Court of Appeals who may be in office at the time when this act takes effect Shall continue in office as judges of the said Court of Criminal Appeals until the expiration of their term of office.
SEC. 5. Said court shall have appellate jurisdiction coextensive with the limits of the State in all criminal cases of whatever grade, with such exceptions and under such regulations as may be prescribed by law.
SEC. 6. Said court and the judges thereof shall have the power to issue the writ of habeas corpus, and, under such regulations as may be prescribed by law, issue such writs as may be necessary to enforce its own jurisdiction.
SEC. 7. Said court shall have power, upon affidavit or otherwise, to ascertain such matters of fact as may be necessary to the exercise of its Jurisdiction. *Page 645 
SEC. 8. The judge of said court shall choose a presiding judge for said court from their number at such times as they shall think proper, and all writs and process issuing from said court shall bear test in the name of said presiding judge and the seat of the court.
SEC. 9. When said court, or any member thereof shall be disqualified, under the Constitution and laws of this State, to hear and determine any case or cases in said court, the same shall be certified to the Governor of the State, who shall immediately commission the requisite number of persons learned in the law for the trial and determination of such cause or causes.
SEC. 10. Said court shall hold its terms as follows:
A term of the court shall be held in the city of Tyler, in Smith County, which shall begin on the first Monday in October in each year, and may continue until the last day of December thereafter, unless the business before it is sooner disposed of.
A term of said court shall be held in the city of Dallas, in Dallas County, which shall begin on the first Monday in January in each year, and may continue until the last day of March thereafter, unless the business before it is sooner disposed of.
A term of said court shall be held in the city of Austin, in Travis County, which shall begin on the first Monday in April in each year, and may continue until the last day of March thereafter, unless the business before it is sooner disposed of.
SEC. 11. Appeals from the several counties shall be returnable to such terms of said court as shall be determined by said court, under the rules thereof: Provided, that appeals from the several counties in the Supreme Judicial District in which Austin is situated shall be returnable to the term of the Court of Criminal Appeals held in said city.
SEC. 12. Said court shall appoint a clerk for each place at which it may sit, who shall hold his office for four years, unless sooner removed by the court for good cause, entered of record in the minutes of said court.
SEC. 13. Said clerks shall, before entering upon the duties of their offices, take and subscribe the oath of office prescribed by the Constitution, and shall give the same bond, to be approved by the Court of Criminal Appeals, as is now or may be hereafter required by them, of clerks of the Supreme Court.
SEC. 14. Said clerks shall perform as clerks of the Court of Criminal Appeals the like duties as are now or may hereafter be required by law of the clerks of the Supreme Court, and shall be subject to the same liabilities as are now or may hereafter he prescribed for the clerks of the Supreme Court.
SEC. 15. Said clerks may appoint deputies, who shall perform all the duties of said clerks, and who shall be responsible to said clerks for the faithful discharge of the duties of their offices. *Page 646 
SEC. 16. It shall be the duty of the Court of Criminal Appeals to procure a seal for said court at each place at which it may hold its sessions, said seals to be of the same size and design, and have a star with five points, with the words "Court of Criminal Appeals of Texas" engraved On each of them.
SEC. 17. Said court is hereby authorized and required to appoint a reporter of its decisions as may be required by law to be published; said reporter may be removed by the court for inefficiency or neglect of duty; said reporter shall receive an annual salary of $3000, payable monthly, upon the certificate of the presiding judge of said court. The volumes of the decisions of said court shall be styled "Texas Criminal Reports," and shall be numbered in continuation of the present number of the Court of Appeals Reports. Said volume shall be printed and disposed of as is now or may hereafter be provided by law for the printing and distribution of the Reports, of the Supreme Court.
SEC. 18. As soon as the opinions are recorded, the originals, together with the records and papers in each case to be reported, shall be delivered to the reporter by the clerks of said court, who shall take the reporter's receipt for the same, but the reporter shall return to said clerks the said opinions, records, and papers when he shall have finished using them.
SEC. 19. All criminal cases pending in the Court of Appeals when this act takes effect shall be transferred to the Court of Criminal Appeals, to be determined by said court its provided by law. All civil cases pending in the Court of Appeals when this act takes effect shall be transferred to the Court of Civil Appeals having jurisdiction of the same, and it shall be the duty of the clerks of the Court of Criminal Appeals to transmit the original papers and certified copies of orders of the court made in each of said cases to the Court of Civil Appeals to which the same is transferred.
SEC. 20. When the court from which an appeal has been or may hereafter be taken, has been or shall be deprived of jurisdiction over any case pending such appeal, and when such ease shall have been or may hereafter be determined by the Court of Criminal Appeals, the mandate of said Court of Criminal Appeals shall be directed to the court to which jurisdiction has been or may hereafter be given over such case.
SEC. 21. In every State ease of a less grade than felony, in which an appeal is taken to the Court of Criminal Appeals, and the judgment of the court below is affirmed against the defendant, all fees due the clerk of said court in such ease shall be adjudged against the defendant and his sureties on his recognizance, for which execution shall issue as in other cases of appeal to the Court of Criminal Appeals. Should such case be reversed by the Court of Criminal Appeals and a new trial be had in the court below, and the defendant convicted, then the costs aforesaid in favor of the clerk of the Court of Criminal Appeals shall be taxed by the *Page 647 
court below against the defendant; and a certified copy of said bill of costs by the clerk of the Court of Criminal Appeals, filed in the court below, shall be sufficient to require said costs to be taxed and collected as other costs against the defendant in the court below.
SEC. 22. The following courts have jurisdiction in criminal actions:
1. The Court of Criminal Appeals.
2. The District Courts.
3. The County Courts.
4. The Justice Courts, and the Mayors' and other courts of incorporated cities and towns.
SEC. 23. The Court of Criminal Appeals, or either of the judges thereof, shall have original jurisdiction to inquire into the cause of the detention of persons imprisoned or detained in custody, and for this purpose may issue the writ of habeas corpus, and upon the return thereof may remand such person to custody, admit to bail, or discharge the person imprisoned or detained, as the law and the nature of the case may require.
SEC. 24. The Court of Criminal Appeals shall have appellate jurisdiction coextensive with the limits of the State in all criminal cases of whatever grade.
SEC. 25. The preceding section shall not be so construed as to embrace cases which have been appealed from Justice, Mayors', or other inferior courts, to the County Court, and in which the judgment rendered or fine imposed by the County Court shall not exceed $100, exclusive of cost. In such cases the judgment of the County Court shall be final.
SEC. 26. Appeals front judgments rendered by the District or County Court, in criminal actions, shall be heard by the Court of Criminal Appeals.
SEC. 27. The defendant to a criminal action need not be personally present upon the hearing of his cause in the Court of Criminal Appeals, but he may appear in person in cases where by law he is not, committed to jail upon appeal.
SEC. 28. When the defendant appeals in any case of felony, he shall be committed to jail until the decision of the Court of Criminal Appeals can be made and received.
SEC. 29. An appeal in a felony case may be prosecuted immediately to the term of the Court of Criminal Appeals pending at the time, the appeal is taken, or to the first term of such court after such appeal, without regard to the law governing appeals in other cases; and it shall be the duty of the clerk, upon the application of either the State or the defendant, to make out and forward without delay, to the Court of Criminal Appeals, wherever it may be in session, or if not in session, to the clerk of said court where it will next be in, session, a transcript of the case.
SEC. 30. The transcript may be filed in the Court of Criminal Appeals, and the case tried and determined in said court, while the District Court *Page 648 
in which the conviction was had is yet in session; and upon an affirmance of the judgment of conviction by the Court of Criminal Appeals, sentence may be pronounced by the District Court at the same term at which the conviction was had, or any term thereafter.
SEC. 31. In case the defendant, pending an appeal in a felony case, shall make his escape from custody, the jurisdiction of the Court of Criminal Appeals shall no longer attach in the case; and upon the fact of such escape being made to appear, the court shall, on motion of the Attorney-General, or attorney representing the State, dismiss the appeal; but the order dismissing the appeal shall be set aside if it shall be made to appear that the accused had voluntarily returned to the custody of the officer from whom he escaped within ten days.
SEC. 32. In appeals of cases of misdemeanor the following form of recognizance shall be considered sufficient:
State of Texas } }
vs. } No.......... }
A........ B........}
This day came into open court A........ B........, defendant in the above entitled cause, who, together with C........ D........ and E........ F........, his sureties, acknowledge themselves severally indebted to the State of Texas in the penal sum of dollars; conditioned, that the said A........ B........, who stands charged in this court with the offense of......., and who has been convicted of said offense in this court, shall appear before this court from day to day and from term to term of the same, and not depart without leave of this court, in order to abide the judgment of the Court of Criminal Appeals of the State of Texas in this case.
The amount of such recognizance shall be fixed by the court in which the judgment was rendered, and the sufficiency of the security thereon shall be tested and the same proceedings had in case of forfeiture as in other cases of recognizance.
SEC. 33. The Court of Criminal Appeals shall not entertain jurisdiction of any case in which a recognizance is required by law, unless such recognizance shall comply substantially with the form presented in the preceding section.
SEC. 34. As soon as a transcript is prepared the clerk shall forward the same by mail or other safe conveyance, charges paid, to the proper clerk of the Court of Criminal Appeals.
SEC. 35. The clerk shall immediately after the adjournment of the court at which appeals in criminal actions may have been taken, make out a certificate, under his seal of office, exhibiting a list of all such causes which have been decided, and in which the defendant has appealed. This certificate shall show the style of the cause upon the docket, the offense of *Page 649 
which the defendant stands accused, the day on which judgment was rendered, and the day on which the appeal was taken; which certified list he shall transmit, post paid, to the clerk of the Court of Criminal Appeals at the proper place.
SEC. 36. The clerk of the Court of Criminal Appeals shall file the certificate provided for in the preceding section, and notify the Attorney-General that the same has been received.
SEC. 37. When it appears by the certificate provided for in the preceding section that an appeal has been taken in any case in which the transcript has not been received by the clerk of the Court of Criminal Appeals, within the time required by law for filing transcripts in civil actions, the clerk of the Court of Criminal Appeals shall immediately notify the clerk of the proper court, by mail, that such transcript has not been received.
SEC. 38. The clerk receiving notification as provided in preceding section shall without delay prepare and forward another transcript of the case as in the first instance, and shall notify the clerk of the Court of Criminal Appeals, by letter sent by mail, of the fact that such transcript has been forwarded, and the day on which and the manner in which the same was forwarded.
SEC. 39. The clerk of the Court of Criminal Appeals shall receive, file, and docket appeals in criminal actions under such rules as may be prescribed by the court; except in cases of felony, a transcript may be filed, and the case heard and determined at any time during the term to which the appeal is taken.
SEC. 40. The Court of Criminal Appeals shall hear and determine appeals in criminal actions at the earliest time it may be done with due regards to the rights of parties and a proper administration of justice.
SEC. 41. The Court of Criminal Appeals may affirm the judgment of the court below, or may reverse and remand for a new trial, or may reverse and dismiss the case, or may reform and correct the judgment, as the law and the nature of the case may require. In all criminal cases by it decided, the Court of Criminal Appeals shall deliver a written opinion setting forth the reason for the decision.
SEC. 42. The Court of Criminal Appeals may reverse the judgment in a criminal action as well upon the law as upon the facts; but when a cause is reversed for the reason that the verdict is contrary to the weight of evidence, the same shall in all cases be remanded for a new trial.
SEC. 43. As soon as the judgment of the Court of Criminal Appeals is rendered, the clerk shall make out the proper certificate of the proceedings had and judgment rendered, and transmit the same by mail to the clerk of the proper court, or deliver the mandate to the defendant or his counsel when the decision is favorable to the defendant, if requested to do so, unless he is instructed by the court to withhold the mandate to any particular time. *Page 650 
SEC. 44. When the certificate of the judgment and proceedings in the Court of Criminal Appeals shall be received by the proper clerk, he shall file the same with the original papers of the cause and note the same upon the docket of the cause [court].
SEC. 45. Where the Court of Criminal Appeals awards a new trial to the defendant, the cause shall stand as it would have stood in case the new trial had been granted by the court below.
SEC. 46. Where the defendant's motion in arrest of judgment was overruled, and it is decided on appeal that the same ought to have been sustained, the cause shall stand as if the motion had been sustained, unless the Court of Criminal Appeals in its judgment direct the cause to be dismissed and the defendant wholly discharged.
SEC. 47. Where the Court of Criminal Appeals reverse a judgment and direct a cause to be dismissed, the defendant, if in custody, must be discharged; and the clerk of the Court of Criminal Appeals shall transmit to the officer having custody of defendant an order to that effect; said order shall be transmitted by telegraph or mail immediately upon the dismissal of the cause.
SEC. 48. When a felony case upon appeal is reversed and remanded for a new trial, the defendant shall be released from custody upon his giving bail, as in other cases, when he is entitled to bail, and the clerk of the Court of Criminal Appeals shall transmit to the officer having custody of the defendant an order to that effect.
SEC. 49. The Court of Criminal Appeals may make rules of procedure as to the hearing of criminal actions upon appeals; but in every case at least two counsel for the defendant shall be heard if they desire it, either by brief or by oral or written argument, or by both, as such counsel shall deem proper.
SEC. 50. When the defendant appeals from the judgment rendered on the hearing of an application under habeas corpus, a transcript of the proceedings in the cause shall be made out and certified to, together with all the testimony offered, and shall be sent up to the Court of Criminal Appeals for revision. This transcript, when the proceedings take place before the court in session shall [be] prepared and certified by the clerk thereof; but when had before a judge in vacation, the transcript may be prepared by any person under direction of the judge and certified by such judge.
SEC. 51. The defendant may not be personally present upon the hearing of an appeal in case of habeas corpus.
SEC. 52. Cases of habeas corpus taken to the Court of Criminal Appeals by appeal shall be heard at the earliest practicable time.
SEC. 53. The Court of Criminal Appeals shall enter such judgment and make such orders as the law and the nature of the case may require, and *Page 651 
may make such orders relative to the costs in the case as may seem right, allowing costs and fixing the amount, or allowing no costs at all.
SEC. 54. The judgment of the Court of Criminal Appeals in appeals under habeas corpus shall be final and conclusive, and no further application in the same case can be made for the writ, except in cases specially provided for by law.
SEC. 55. If an officer holding a person in custody fails to obey the mandate of the Court of Criminal Appeals, he is guilty of an offense and punishable according to the provisions of the penal statutes of this State.
SEC. 56. If the appellant in a case of habeas corpus be detained by any person other than an officer, the sheriff shall, upon receiving the mandate of the Court of Criminal Appeals, immediately cause the person so held to be discharged, and the mandate shall be sufficient authority therefor.
SEC. 57. The judgment of the Court of Criminal Appeals shall be certified by the clerk thereof to the officer holding the defendant in custody, or when he is held by any person other than an officer, to the sheriff of the proper county.
SEC. 58. When by the judgment of the Court of Criminal Appeals upon cases of habeas corpus the applicant is ordered to give bail, such judgment shall be certified to the officer holding him in custody; and if such officer be the sheriff, the bail bond may be executed before him; if any other officer, he shall take the person detained before some magistrate, who may receive a bail bond, and shall file the same in the proper court of the proper county, and such bond shall have the same force and effect as a recognizance and may be forfeited and enforced in the same manner.
SEC. 59. The Attorney-General shall receive from the State the following fees. 1. In each case of felony appealed to the Court of Criminal Appeals, where the appeal is dismissed or where the judgment of the court below is affirmed, the sum of $20. 2. In the case of habeas corpus heard before the Court of Criminal Appeals when the applicant is charged with a felony, the sum of $20.
SEC. 60. The clerk of the Court of Criminal Appeals, in every case of felony brought before such court by appeal, shall receive from the State the sum of $10.
SEC. 61. The fees allowed the Attorney-General and the clerk of the Court of Criminal Appeals by the two preceding sections shall be audited and paid out of the State Treasury upon the certificate of the Court of Criminal Appeals, or of any one of the judges thereof, that the same is correct.
SEC. 62. The district or county attorney shall be allowed the following fees: 1. For all convictions in case of felonious homicide, when the defendant does not appeal or dies, or escapes after appeal and before final judgment of the Court of Criminal Appeals, or when upon appeal the judgment is affirmed, the sum of $50. 2. For all other convictions of *Page 652 
felony, when the defendant does not appeal or dies, or escapes after appealing and before final judgment of the Court of Criminal Appeals, or when upon appeal the judgment is affirmed, the sum of $30. 3. For representing the State in each case of habeas corpus where the defendant is charged with a felony, the sum of $20.
SEC. 63. The Attorney-General shall, in every conviction of offenses against the penal laws in cases of misdemeanors, when the judgment of the court below is affirmed by the Court of Criminal Appeals, or the appeal is dismissed by said court, receive the sum of $10.
SEC. 64. The clerk of the Court of Criminal Appeals shall in every case where the judgment is affirmed, receive the sum of $10: Provided, the entire sum such clerk shall receive as compensation for his services shall not exceed $2500 per annum; any sum over and above that shall be paid by him to the Treasury of the State, under such rules as may be prescribed by the Comptroller, to be approved by the judges of the Criminal Court of Appeals.
SEC. 65. The fees named in the preceding sections shall be taxed against the defendant and collected as in other cases.
 RULES FOR THE COURT OF CRIMINAL APPEALS.
The following are the rules adopted by the Supreme Court, relating to the Court of Criminal Appeals:
1. The clerks of the Court of Criminal Appeals shall be governed by the rules applicable to the clerks of the Courts of Civil Appeals, except where a different rule may be prescribed by statute.
2. The rules governing motions, arguments of counsel, and applications for certiorari to complete the record, as prescribed for the Courts of Civil Appeals, shall apply to the Court of Criminal Appeals.
 RULES GOVERNING IN CRIMINAL CASES IN COUNTY AND DISTRICT COURTS.
109. The clerks of the District and County Courts shall record the proceedings had in their courts in the order of time in which they occur.
110. The record should show, and it should appear in the transcripts of the record for the Court of Criminal Appeals:
First. That the indictment was presented in open court, a quorum of the grand jury being present.
Second. That the defendant pleaded to the indictment, or that a plea was entered for him.
Third. In capital felonies, that the defendant was arraigned and pleaded, or that, upon his refusal to plead, a plea was entered by the court. *Page 653 
 Fourth. That the jury trying the cause were empanelled and sworn according to law.
Fifth. That a final judgment was entered in the cause.
111. Transcripts of the record for the Court of Criminal Appeals shall not be encumbered with copies of capaises, bonds, recognizances, subpœnas, attachments for witnesses, or any of the proceedings had on a former trial, where a new trial has been granted, unless there is some question expressly raised on the trial with reference to such proceedings which requires revision in the Court of Criminal Appeals, or in scire facias cases on appeal or writ of error.
112. In preparing transcripts the following order shall be observed, to-wit:
First. The index, which must refer to the proceedings in the order they appear in the record.
Second. The caption, which shall be as follows: "The State of Texas, County of . . . . . . . . At a term of the . . . . . . Court, begun and holden within and for the County of . . . . . ., at . . . . . . ., on the day of . . . . . ., A.D. 18 . ., and which adjourned on the day of . . . . . ., A.D. 18 . ., the Hon. . . . . . . . ., judge thereof, presiding, the following cause came on for trial, to-wit:
{ The State of Texas, "No. . . . .{ v. { A. B. . . . . . . . . . . . ."
Third. The time and manner of the presentation of indictment.
Fourth. The indictment or information.
Fifth. The pleas of defendant.
Sixth. The verdict and judgment.
Seventh. The statement of facts.
Eighth. The charge of the court.
Ninth. The charges refused.
Tenth. Bills of exception.
Eleventh. Motion for new trial, and motion in arrest of judgment and notice of appeal.
Twelfth. Such other pleas, motions, and orders as are made during the trial of the cause.
Thirteenth. Final judgment [or in a misdemeanor case the recognizance or statement that defendant is in jail].
Fourteenth. Assignment of errors, if any are filed, and request, if any, to send transcript to a branch of the court other than that to which the appeal is returnable.
Fifteenth. Certificate of the clerk, under the seal of the court, which shall certify that the transcript contains a true copy of all the proceedings had in the cause.
113. In preparing the transcript, the following directions must also be *Page 654 
observed: It shall be written on good paper, on one side only, in a neat, legible hand, free from erasures and interlineations, leaving a margin of sufficient width, in which margin the clerk shall note the name of each proceeding, and the time of its occurring or being filed, and at the left-hand lower corner mark the number of each page. At the end of each paper must be copied the file marks indorsed thereon, and a space should be left between the record of each separat paper or proceeding.
114. The transcript must be fastened at the upper end with tape or ribbon, and sealed over the tie with the seat of the court, and folded and indorsed as follows:
 "A. B., appellant, "v. "The State, appellee.
"From County District Court [or County Court], A.D. 18 . ."
115. The statement of facts must contain a full and complete statement of all facts in evidence on the trial of the cause, including copies of all papers, documents, and exhibits adduced in evidence, also the proof of venue and identification of defendant.
116. The transcript of the record, where defendant has been convicted of a misdemeanor, must be delivered to the party appealing, or his counsel; but if not applied for before the twentieth day before the commencement of the term of the Court of Criminal Appeals to which the appeal is returnable, the clerk shall transmit the same by mail, paying the postage thereon, to the clerk of the Court of Criminal Appeals.
117. Transcripts of the record, where defendants have been convicted of a felony, shall be prepared within twenty days after the adjournment of the court, and sent by mail, postpaid, to the clerk of the Court of Criminal Appeals, at the branch to which the appeal is returnable. But where the defendant or his counsel directs the transcript to be sent to a branch of the court where the term is held before the term to which the appeal is returnable by law, the clerk shall so transmit it, and send with such transcript a certified copy of such order or direction.
118. The clerk shall immediately after the adjournment of the court at which appeals in criminal cases are taken, make out a certificate, under his seal of office, exhibiting a list of all such cases where the defendant has appealed. The certificate shall show the style of the cause upon the docket, the offense of which the defendant stands convicted, the day on which the judgment was rendered, and the day on which the appeal was taken, which list he shall transmit to the Attorney-General at Austin.
119. It shall be the duty of the district and county attorneys to see that the judgments in criminal cases are properly entered by the clerks, and, when practicable, they should be present when the minutes are read. *Page 655 
 GENERAL RULES.
1. Any supposed violation of the rules prescribed in the conduct of a cause, to the prejudice of a party, may be reserved by bill of exception, presented as a ground for new trial, and assigned as error by the party who may conceive himself aggrieved by such supposed violation.
2. The foregoing rules shall go into effect, and be of force in all the courts of the State to which they are applicable, from and after this date (October 8, 1892); but shall not affect cases pending in the Supreme Court at the time of the organization of the Court of Civil Appeals, which cases shall be controlled by the rules for the government of the Supreme Court at the time the appeals in such cases were perfected. Except as to such cases, all former rules are hereby superseded.
 *Page 1