PAT HUMPHRIES v. THE STATE.

No. 14313.    Delivered November 4, 1931.

The opinion states the case.

*T. H. McGregor,* of Austin, and *P. E. Campbell* and *J. B. Dibrell,* both of Seguin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for three years.

Deceased, John Wear, died from gunshot wounds inflicted by appellant. Deceased had taken some race horses to a county fair which was being held in the town of Seguin. Appellant had been employed by deceased to aid him in entering the horses in the races that were being held on the fair grounds. Appellant had decided to leave deceased and go with another owner of race horses. Deceased had in his possession in a trunk some harness which appellant claimed belonged to him. The difficulty in which deceased lost his life arose when appellant advised deceased that he was going to leave him, and that he wanted to take his harness with him. According to the version of state's witnesses, deceased was using a pitchfork in placing some hay in the bed of a truck when appellant approached and asked deceased's permission to take his harness out of the trunk in which deceased had placed it. Deceased refused to permit appellant to open the trunk, telling appellant that he was going to take the harness back to Austin. Appellant stated to deceased that he was not going back to Austin with him, and that he wanted his harness. Deceased again told appellant that he could not have the harness. Appellant stepped back a few steps, secured a pistol, and approached deceased. Deceased told appellant to put the pistol down. The wife of deceased approached appellant and he told her to get back. She stepped back and appellant fired three shots in the direction of deceased. Two of the shots took effect. Deceased ran a short distance from the scene of the diffiuclty, and, falling to the ground, expired before physicians could be summoned. According to the testimony of state's witnesses, deceased in no manner threatened appellant, and made no demonstration toward him prior to the firing of the fatal shots by appellant.

Appellant and his witnesses testified that deceased, in declining to permit appellant to take his (appellant's) harness, cursed appellant and advanced upon him with a pitchfork; that appellant secured his automatic pistol out of a trunk and fired upon deceased two or three times. Appellant testified that he believed deceased was going to kill him and that he fired at deceased in order to save his own life. He said that he had known of many difficulties in which deceased had engaged, some of which he described to the jury. Other witnesses testified to having seen deceased engage in several fights. Many witnesses testified that dceased bore the reputation of being a violent and dangerous man. These witnesses had known deceased for many years. The state offered no witnesses to the contrary.

Bill of exception No. 2 presents the following occurrence: Appellant's witness Oscar Newburg had testified to some of the circumstances surrounding the homicide. He had also stated that the general reputation of deceased for being a violent and dangerous man was bad. He said that he had known appellant in the city of Austin since 1914, but did not undertake to testify concerning appellant's reputation in any respect. On cross-examination, the witness was asked by the district attorney if it was not a fact that appellant was in the penitentiary in 1916. Appellant objected to the question on the ground that it was immaterial, improper, prejudicial, and placed before the jury the fact that appellant had been in the penitentiary. When appellant's objection was interposed the court asked the district attorney whether or not it was the purpose of the testimony to show that appellant had been in the penitentiary. The district attorney replied that he desired to impeach the witness, if he could, on his statement that he had known appellant for 16 years. The court then stated to the jury: "The question as to whether or not this man had been in the penitentiary in 1916 will not be considered by you for any purpose whatever; it is no evidence." After so instructing the jury the court inquired of the district attorney, in the presence and hearing of the jury, whether he (the district attorney), knew that appellant had been in the penitentiary. In the presence and hearing of the jury the district attorney said, "Yes, sir." He further stated to the court in the presence and hearing of the jury that he had "the paper in his hand and he knew he was in the penitentiary in 1916." Appellant promptly interposed objection to the statement of the district attorney. The court certifies in the bill of exception that the conversation between the court and the district attorney took place within a few feet of the jury, and in their presence. At the stage of the proceedings disclosed by the bill of exception appellant had not taken the stand in his own behalf. Later he did testify, but the district attorney made no attempt to show that he had served a term in the penitentiary.

It seems useless to discuss whether, under appropriate facts, the error of asking prematurely if the accused had not been confined in the penitentiary would have been rendered harmless by the fact that the accused later took the witness stand and placed himself in a position where proof that he had been convicted of a felony would have been admissible as affecting his credibility. Such proof was not made after appellant took the stand, and the only way such fact got before the jury was from the question of the district attorney, backed up by his unsworn statement that he held in his hand the paper showing that appellant had been in the penitentiary, and that he knew that he was in the penitentiary in 1916. The district attorney, although unsworn as a witness, in effect gave testimony obviously prejudicial to appellant. See Miller v. State, 117 Texas Crim. Rep., 247, 36 S. W. (2d) 158. The question asked by the district attor-

ney and the statement made by him had the effect of getting an improper matter before the jury, which was highly prejudicial and not, under the circumstances reflected by the record, admissible. Harris v. State, 114 Texas Crim. Rep., 509, 26 S. W. (2d) 216. The opinion is expressed that, in view of the statement of the district attorney, the attempted withdrawal of the question asked by the district attorney did not cure the error. In Deckerd v. State, 88 Texas Crim. Rep., 132, 225 S. W., 166, in considering the effect of withdrawing testimony erroneously admitted, Presiding Judge Morrow used language as follows: "The subject of withdrawing evidence erroneously admitted is one upon which there may be found many decisions, and from them we think the rule may be stated that the error in admitting improper evidence may be generally corrected by a prompt and definite withdrawal by the court, and instruction to the jury to disregard it. Miller v. State, 31 Texas Crim. Rep., 636, 21 S. W., 925, 37 Am. St. Rep., 836, and cases therein cited; also Rose's Notes on Texas Report, vol. 5, page 909. But this rule is subject to the qualification that the withdrawal will not cure the error in the admission of testimony of a material character prejudicial to the accused on trial, and that, if doubt is entertained, it should be resolved in favor of the accused."

In his Annotated Penal Code of Texas, sec. 166, Mr. Branch states the rule as follows: "An error in admitting proof of other offenses is not cured by withdrawing the illegal testimony or limiting it in the charge."

In discussing the effect of the withdrawal of testimony of a material character, prejudicial to the accused, Judge Lattimore, in McIntosh v. State, 85 Texas Crim. Rep., 417, 213 S. W., 659, said: "Some of these matters were not permitted to be answered by the court, and some of them the jury were instructed not to consider; but, as has often been strongly put, the jury are but human, and such an instruction is practically valueless, except possibly to preclude discussion of such matters. Impressions made on the mind can no more be erased by such instructions than the memory of a curse or a blessing can be torn out and thrust away by the effort of the will."

The issue of guilt was closely contested. If the testimony of appellant and his witnesses was to be believed, appellant acted in self-defense. Knowledge on the part of the jury that appellant had been in the penitentiary might have turned the scales against appellant. From what we have said it follows that we are of the opinion that the bill of exception manifests reversible error.

For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been exam-

ined by the Judges of the Court of Criminal Appeals and approved by the Court.