## FRITZ BARTH, SR., v. THE STATE.

No. 1390.   Decided June 8, 1898.

39  381
39  602

**1.   Confessions to Officer Made in Arrest—Time of Making After Warning.**

To render a confession made by a party when in arrest admissible, the warning given must be in substantial compliance with the statute, and the confession, if not made directly after the warning given, must be within such reasonable time thereafter as to indicate that the defendant yet remembered and was impressed with the warning given, and that he made the confession under due apprehension of its legal effect, to wit, that it could be used against him.

**2.   Same—Too Remote.**

Where the officer to whom the confession was made stated that he had warned defendant that any statement he might make could be used against him, but did not know how long it was after said warning that defendant made the confession to him, —it might have been one, two, or three weeks—Held, it can not be assumed that at said time defendant would still be impressed with the idea that what he then said could be used in evidence against him, or that he knew he was then making his statements under the conditions that had previously been stated to him by the officer, and the confessions were not admissible.

**3.   Same—Confessions to Third Parties.**

If a confession made to an officer while in arrest is inadmissible owing to doubt and uncertainty as to the time and existing effect of the warning, a fortiori it will be inadmissible when made to a third party, there being no other warning subsequent to that given by the officer.

**4.   Evidence—Insanity—Acts and Conduct, Statements and Declarations of Defendant While in Arrest.**

While the acts and conduct of a defendant under arrest are competent evidence on an issue of insanity, whether defendant has been warned or not, his statements and declarations of a criminative character, in connection with the crime for which he is on trial, are not admissible in the absence of a proper warning.

**5.   Subsequent Withdrawal and Exclusion of Admitted Evidence.**

The rule as to the withdrawal and subsequent exclusion of evidence admitted where its admission was improper and illegal is, if the testimony is not very material it may be withdrawn, and the error cured; but where it is of a material character and calculated to influence or affect the jury, the withdrawal of the same by the court from the consideration of the jury will not cure or heal the vice of its admission.

**6.   Evidence—Res Gestae.**

It is competent to prove by a witness that shortly after the homicide a party other than deceased, viz., his daughter, had wounds upon her person received in the difficulty resulting in said homicide.

**7.   Murder—Charge as to Both Degrees.**

As a general rule it is always best to give both degrees of murder in charge to the jury, no matter how atrocious the circumstances attending the homicide.

APPEAL from the District Court of Gillespie. Tried below before Hon.
W. M. ALLISON.

Appeal from a conviction for murder in the first degree; penalty,
death.

The indictment charged appellant with the murder of his wife, Mrs.
Johanna Barth, on the 9th of December, 1897, by shooting her with a
gun.

Appellant and his wife were each about 74 years of age at the time
of the homicide, and it appears that they had lived together as man
and wife in reasonable peace and happiness until the summer of 1897,
several months preceding the homicide. They lived upon their little
farm in Gillespie County, and with them lived their son, Carl, and their
daughter Mrs. Bertha Hopf. It appears that their son Carl was assisting
in working and managing the little farm. During the summer of 1897
quite a controversy seems to have arisen between Carl and his father,
appellant, with regard to the removal of a fence upon the farm. This
controversy resulted in the appellant's executing a deed to his wife, the
deceased, to all of his property, including the farm; and after doing so
he went off to live with an older son, who resided in an adjoining county.
After remaining with this son for several weeks, he concluded that he had
made a mistake in deeding away the property to his wife, and he re-
turned home and requested that she would reconvey the same back to him.
It does not appear that she objected or refused to do this, but it seems
that she objected to the expense of executing the reconveyance, because,
as she informed him, she had been advised that the deed which he had
executed to her was invalid and did not transfer the property to her in
law. He remained at home, sleeping in a different room from that occu-
pied by his wife; and the son Carl assumed the control and management
of the little farm. Several disputes occurred between Carl and his father
as to how the farming operations should be conducted, and the deceased,
in these controversies, had agreed with Carl. Finally deceased insisted
that Carl should take his place, at meal time, at the table, inasmuch as
he otherwise assumed to act as the head of the family. In the discus-
sion over this matter the defendant understood the other members of the
family to say that they were all ashamed of him; and from that time on
he persisted in getting his meals from the table and eating alone to him-
self. And, though it is not stated, it is inferrable from the other facts
stated that he ceased to have any further pleasant relations with any
of the members of the family, and especially with his wife. On the morn-
ing of the homicide, Mrs. Barth, the deceased, was sweeping out the hall-
way of the house, when appellant fired upon her with a double-barreled
shotgun, shooting her in the back at such close distance as to set her
clothing afire, and killing her instantly. Mrs. Hopf, the daughter,
rushed into the hallway, when defendant assaulted and cut her about the
face with a razor; and she fled immediately to the nearest neighbors,
about a half mile off. After she left the appellant cut his wife's throat

from ear to ear, nearly severing the head from the body, and then attempted to cut the arteries of both of his own wrists with the razor. He was found afterwards lying in the yard, where he had almost bled to death.

The defense interposed for him at the time of the trial was insanity, but beyond the facts as above stated there were no facts tending to show insanity, and his family physician for twenty years, and who treated him for the self-inflicted wounds, after he was put in jail, testified that he was not insane. The matters pertaining to his confessions after his arrest and while he was confined in jail are sufficiently stated in the opinion.

*A. W. Morsund,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death, and he prosecutes this appeal.

The State introduced the witness G. B. Riley, sheriff of Gillespie County, who testified that he arrested defendant, Fritz Barth, on December 9, 1897, on the charge for which he was being tried, and placed him in jail on the same day, where he remained up to the time of the trial, and, while said defendant was so in jail, he had two conversations with him; that at the time of having the first conversation with him in jail, which time the witness knows was before Christmas of 1897, he informed defendant that any statement he might make could be used in evidence against him; that he only informed defendant once, and can not say whether the statement of defendant made to him, and proposed to be used as evidence against defendant, was made in the first conversation, after he had so informed defendant, or in the second conversation, had later,—how long after he could not recollect, it may have been only one week or two or three weeks, but knows defendant's statement was after such caution. When the State offered to prove by the witness the statement so made by defendant to said witness, defendant objected, because defendant, being at the time under arrest, had not been properly cautioned, as required by law, to make such evidence admissible, and the evidence given failed to show that such statements were made after defendant was properly cautioned and under such caution; which objections were by the court overruled, and witness permitted to testify that defendant said he knew he had killed his wife, and they could do as they pleased with him. Witness Riley stated these conversations occurred some time between December 10 and December 25, 1897, and after he had cautioned him.

In Barnes v. State, 36 Texas, 356, it was held that the confessions admitted in testimony should be contemporaneous with the caution; that is, should be made immediately after the caution given. In Maddox v. State, 41 Texas, 205, the rule above laid down was departed from to the

extent of permitting confessions to be introduced which were not made immediately after the warning given, but which were made by the defendant in that case to the same parties who had given the warning, and only a few hours afterwards, on the same day, while they were taking him to jail.   In Baker v. State, 25 Texas Criminal Appeals, 1, the question came up in somewhat different form.   In the latter case the warning given was by the magistrate, who was conducting a preliminary examination of the case.   He gave the warning required under the statute in regard to the privilege of defendant to make a statement.   It appears that appellant at this time made no statement, but subsequently, some hours after the warning given by the magistrate, made a confession, while he was still under arrest, in the absence of the magistrate, to the officers who then had him in charge.   In that case the court used the following language: "The fact that a few hours prior to the time of making said statements the defendant had been cautioned by the magistrate, before whom the charge against him was being investigated, that a voluntary statement, if he should make one, might be used in evidence against him, does not, we think, dispense with a caution with respect to statements subsequently made on another occasion, to another party, and under entirely different circumstances.   The caution given him by the magistrate related alone to a voluntary statement—a judicial proceeding in the presence of the court—a written statement to be signed by the defendant. It would be stretching the rule too much, we think, to apply a caution made under such circumstances to any and all statements made by the defendant on subsequent occasions." The court appears to predicate its holding on the idea that the statements were not made to the officer giving the caution, and not embraced within that warning; that the warning given was intended to suggest a voluntary statement only, and not to suggest an extrajudicial confession, or one made to some other than the magistrate giving the warning.   The decision appears to uphold a strict construction of the statutes regulating and controlling confessions.   We do not gather, however, from this decision, that it was intended to decide that, before a confession is admissible, it must be made immediately after the warning given; and we think the true rule on this subject, as adduced from the authorities, is that the warning given must be in substantial compliance with the statute, and that the confession, if not made directly after the warning given, must be within such reasonable time thereafter as to indicate that the defendant yet remembered and was impressed with the warning given, and that he made the confession under a due apprehension of its legal effect, to wit, that it could be used in evidence against him.   Applying this rule to the question here presented, we do not think that the statement or confession made was under such conditions as authorized its admission in testimony against appellant.   The officer to whom the statement was made stated that he had warned or cautioned appellant that any statement he might make in regard to the homicide might be used against him, but he does not know how long, prior to appellant's making said confession to him, he gave said warning.   He

states that it might have been a week, or two or three weeks. We can not assume, from this general statement, that appellant was at the time he made the confession impressed with the idea that what he then said could be used in evidence against him, or that he knew he was then making it under the conditions that had previously been stated to him by the officer.

The State was also permitted to prove by the witness John McDugal that he was the jailer of Gillespie County, and had charge of defendant while he was confined in jail on this charge; that some time after December 25, 1897, he had several conversations with the defendant; that he gave the defendant no caution or warning that any statement he might make could be used against him. The State was permitted by this witness to prove that while the defendant was in jail, some time after Christmas, he said to witness that he knew he had shot his wife; that his wife had said to him, "Only wait, we will get you yet," and he then took his gun and shot her; that he and his wife had quarreled eight days before. The bill of exceptions shows that this testimony was afterwards, while the district attorney was making his opening argument, and after he had been speaking about twenty minutes, excluded by the court, and that the judge instructed the jury verbally not to consider the same as evidence in the case.

The State also introduced Dr. Keidel as a witness, who stated that he visited appellant in jail, and that some time after Christmas he had a conversation with him, while appellant was yet in jail, and that he gave him no caution or warning that what he stated to him might be used in evidence against him on the trial; that in said conversation appellant stated to him: "You can do with me what you please. I know what I have done. Cut me into pieces; hang me; do as you please. You need not attend me." This evidence was admitted over the objections of the defendant. But after the opening argument of the district attorney had proceeded some twenty minutes, the court, of his own motion, informed the jury that this evidence was inadmissible, and that he withdrew such testimony from them, and that they should not consider it in the case.

In explaining these bills of exception, the court states that the confession of appellant to Dr. Keidel was made after George Riley, the sheriff, had already testified that he had cautioned the defendant, before Christmas of 1897, and told him that anything he might say could be used in evidence against him. With reference to this explanation we make the same observations that we made in regard to the admission of the statements made by appellant to the sheriff. And we make this additional observation: That this statement was still more remote than the statement made to the sheriff, because it was made to a different person, long after the warning given by the sheriff; and we can not presume against appellant that he then had the warning given him by the sheriff in mind, or that he knew that said warning was operative as to statements made by him to another person than the sheriff, who gave the caution. Further-

39th Crim. Rep.—25

more, with reference to the matter contained in these last two bills of exception, it will be seen that no warning whatever was given by the parties to whom the confessions were made by appellant.

It is suggested that the statements made, however, are admissible, not as confessions of guilt, but as bearing upon the question of the insanity of the appellant, which was set up as a defense in this case. It has been held that acts and conduct of a defendant, while in jail, may be given in evidence against him on the issue of insanity, regardless of whether he had been warned prior to said acts and conversations. See Adams v. State, 34 Texas Crim. Rep., 470; Burt v. State, 38 Texas Crim. Rep., 397. In Hurst v. State, 40 Southwestern Reporter, 264, however, the rule above stated was qualified; and we there held, if the confession or statement was of a criminative character in connection with the case for which he was then being tried, that such acts and declarations could not be used, in the absence of a proper warning. Applying this rule to the testimony of the witnesses as to the statements made by appellant to them, we hold that this evidence should not have been admitted. The declaration of appellant made to McDugal, that appellant told him that he knew he had shot his wife, and that his wife had said to him, "Only wait, we will get you yet," and he then took his gun and shot, and that he and his wife had quarreled eight days before, while it might be used by the jury to show the sanity of appellant at the time of the homicide, as acting on motive, yet the very fact that such evidence showed motive would tend to show that the killing was upon express malice. Even if the jury had been instructed that they could only regard such testimony in considering the question of the insanity of the appellant, we do not see how, in the nature of things, the jurors could have avoided considering such testimony for the other purpose, to wit, of showing motive; that is, malice in connection with the killing. As was said in Hurst's Case, supra: "If the jury, under the charge of the court, should determine, from the statement of the defendant, that he had a reasonable and logical motive for the commission of the offense, to wit, revenge, and that he was consequently sane, then by what process of reasoning would they be able to call a halt, and refrain from using said testimony, not only for the purpose of establishing his guilt, but the grade of the homicide. If they could stop short in the use of this testimony at the point indicated by the court, then we concede to the ordinary juror a subtlety of reasoning and a restraining will power which, to say the least of it, would appear to be extraordinary." We would make the same observations with reference to the statement of appellant made to the witness Dr. Keidel.

But it is said that the error of the court in admitting this testimony is cured by the subsequent exclusion thereof and withdrawal by the court of said testimony from the consideration of the jury. This question has been before the courts of this State in a number of cases. See Railway v. Levy, 59 Texas, 542; Miller v. State, 31 Texas Crim. Rep., 609. We think the true rule on this subject to be: If the testimony is not of a very material character, it may be withdrawn by the court, and the error

thus cured; but if, on the contrary, the evidence was of a material character, and was calculated to influence or affect the jury, the withdrawal of the same from their consideration would not heal the vice of its admission. As was said in Railway v. Levy, supra: "It is true that the admission of some kinds of testimony, which a jury is afterwards directed not to consider, may not be sufficient cause for reversal; but we are of opinion that where, in cases like the present, evidence which is calculated to arouse the sympathies of jurors in favor of the party who offers it, and to arouse the feelings of the jurors against the opposite party, is erroneously permitted to go before the jury, it is ground for reversal." If this is a good rule in civil cases, by a stronger reason it ought to be the rule in criminal cases. In our opinion, the statements made by appellant were of a material character. Indeed, the testimony elicited from McDugal was the strongest evidence the State had to prove express malice, and we do not believe that the withdrawal of this testimony by the court could eradicate its effect from the minds of the jury.

With regard to the testimony of Fritz Schaefer, that when Mrs. Bertha Hopf came to his house on the morning of the homicide, shortly thereafter, she had wounds on the side of her face, and was bleeding, we think the same was admissible, but not anything that she may have said about it. She herself was a competent witness to prove the fact of how she received the wounds, and this, being a part of the res gestae of the homicide, was admissible.

It is not necessary here to discuss the testimony or its sufficiency. The issues in the case were either that appellant was guilty of murder in the first degree, upon express malice, or, if he was insane at the time of the act, that he was guilty of no offense. It occurs to us that the case can be very easily tried without the admission of illegal or improper testimony. We would not be understood as holding that the inferior degrees of homicide should not be given by the court in his charge. As a general rule, it is always best to give both degrees of murder, no matter how atrocious the circumstances attending the homicide. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HURT, Presiding Judge, absent.