## CHARLEY McCANDLESS v. THE STATE.

### No. 1883. Decided May 31, 1900.

**1. Evidence—Withdrawal of Illegal.**

The erroneous admission of illegal evidence which is of a material character and calculated to influence the jury is not cured by its subsequent withdrawal from the consideration of the jury.

**2. Murder—Self-Defense—Charge.**

On a trial for murder, where the evidence showed that deceased was making an assault with a five-pound rock (a deadly weapon) or a pistol, or both, upon defendant, when the latter shot him, Held, it was error to charge the jury in connection with the law of self-defense that in order to justify upon self-defense defendant must, before killing his adversary, have resorted to all other means for the prevention of injury to himself.

**3. Same—Provoking Difficulty—Character of Charge as to.**

On a trial for murder, to authorize a charge upon provoking a difficulty, the act of defendant must have been a hostile act reasonably calculated to produce the occasion for bringing on the difficulty for the purpose of slaying deceased and must have been so intended by defendant; and while the judge should always be able to indicate from the evidence the act of provocation, yet it is not necessary to submit the words or the particular acts of defendant. The charge on this subject should be couched in general terms. See opinion for suggestions as the proper form for such a charge.

**4. Same.**

On a trial for murder, where the charge of the court required that the "difficulty was provoked with the apparent intention of taking the life of deceased," and the word "apparent" was objected to by defendant, Held this portion of the charge is statutory (Penal Code, article 708), and the word "apparent" has as strong a meaning as "actual."

**5. Same.**

On a trial for murder, an instruction on provoking a difficulty when not authorized by the evidence is calculated to injure and impair defendant's right of self-defense. See opinion in extenso for facts stated which did not authorize a charge upon provoking the difficulty.

APPEAL from the District Court of Coryell. Tried below before Hon. J. S. STRAUGHAN.

Appeal from a conviction of murder in the second degree; penalty, seventeen and one-half years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Hill Walton, on the 5th day of March, 1899, by shooting him with a pistol.

All the essential facts adduced in evidence on the trial are stated

in the opinion of the court, and the bills of exception which are discussed need no further illustration from the record.

*McDowell, Sadler & Arnold,* for appellant, filed a most elaborate and able argument.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for seventeen and one-half years, and he prosecutes this appeal.

With reference to appellant's application for continuance, it being his second application, we do not believe the court erred in overruling the same.

Appellant reserved certain bills of exception to the action of the court admitting testimony to the effect that deceased was not in the habit of carrying a pistol, and also that deceased was not in the habit of swearing and using oaths. The court explains that, while this testimony was admitted, it was subsequently excluded, and the jury instructed to disregard it. We note, in the charge of the court, that the jury were instructed to disregard the testimony concerning the pistol; but we do not find that any instruction was given excluding the testimony with regard to defendant not using oaths, or that the witness had never heard him use an oath. The court, however, may have withdrawn this testimony orally, and have orally instructed the jury to disregard the same. Said testimony was not admissible, and was a character of evidence touching upon material issues, to wit, appellant relied upon self-defense, and introduced testimony tending to show that deceased, at the time appellant shot him, was making a move as if to draw a pistol; and appellant also introduced testimony showing that at the time of the difficulty in which the killing occurred, deceased cursed him. Now, the admission of this character of testimony was calculated to disparage appellant's testimony upon this issue before the jury, either to discredit or weaken it. There are cases in which the withdrawal of testimony which has been introduced against a defendant may cure the error. Miller v. State, 31 Texas Crim. Rep., 609; Sutton v. State, 2 Texas Crim. App., 342; Nalley v. State, 28 Texas Crim. App., 387; Morgan v. State, 31 Texas Crim. Rep., 1; Jones v. State, 33 Texas Crim. Rep., 7. But the admission of evidence which is of a material character, and calculated to influence the jury, is not cured by its subsequent withdrawal from their consideration. Welhousen v. State, 30 Texas Crim. App., 623; Bluman v. State, 33 Texas Crim. Rep., 43; Barth v. State, 39 Texas Crim. Rep., 381. We are not prepared to say in this instance that the error was harmless, or was cured by the subsequent withdrawal of this evidence.

Appellant reserved an exception to that portion of the charge on self-defense embraced in article 677, Penal Code, which justifies homicide

in the protection of person or property against any other unlawful or violent attack besides an attack to murder, maim, etc., or the inflicting of serious bodily injury, and provides that in such case all other means must be resorted to for the prevention of the injury.  It is questionable to our minds whether this charge was authorized by the evidence.  If appellant's theory be true, when he shot deceased, deceased was in the act of making an assault on him with a rock which weighed about five pounds (evidently a deadly weapon), or a pistol, or both.  If this be true, the attack was of a character to cause appellant to believe that his life was in danger, or he was in danger of serious bodily injury, and not that he was in danger of a violent attack of a less degree, in which he would be required to resort to all other means before retreating, before killing his adversary.  We do not believe this charge should have been given.  Kendall v. State, 8 Texas Crim. App., 569; Orman v. State, 22 Texas Crim. App., 604; Id., 24 Texas Crim. App., 495; Williams v. State, 22 Texas Crim. App., 497; Kelly v. State, 27 Texas Crim. App., 562; Hunnicutt v. State, 20 Texas Crim. App., 633; Fuller v. State, 30 Texas Crim. App., 560.  The court gave a very full charge on the law of self-defense, and then coupled with said charge, as a limitation thereon, an instruction to the jury on provoking the difficulty.  We quote said charge as follows:  "You are further instructed, as a part of the law of this case, and as a qualification of the foregoing charge on self-defense, that if you believe beyond a reasonable doubt that defendant by his own wrongful act, brought about the necessity of killing deceased, and provoked a difficulty with the apparent intention of taking the life of deceased intentionally and with a view thereto, and that under such circumstances he shot and killed deceased, then defendant's plea of self-defense will not avail him, and the homicide would be murder in the first or second degree, according as the facts and circumstances may justify the jury in finding.  But if you believe from the evidence that defendant provoked a difficulty without any intention to kill or inflict serious bodily injury, and suddenly and without deliberation did the act of killing, under the immediate impulse of sudden passion, arising from adequate cause, as hereinbefore explained in this charge, while the homicide would not be justifiable, it would be manslaughter as that term is hereinbefore explained.  If, however, the blamable or wrongful acts of defendant, if any, were not intended to produce the occasion, nor acts which were, under the circumstances, reasonably calculated to produce the occasion or provoke the difficulty, then the right of self-defense would be complete, though the act be not blameless.  On the other hand, if defendant did not provoke a difficulty with Walton, in which Walton was killed (if he was killed), and if defendant killed him, then the killing would be murder, manslaughter, or justifiable homicide, according to the facts in the case as applied to the law as contained in this charge."  Appellant objected to this charge on various grounds:  "(1) Because there was no testimony authorizing a limitation of the right of self-defense; (2) that, even if said issue

was raised by the evidence, the charge failed to present all the law on the issue of provoking the difficulty, applicable to the evidence,—it failing to indicate the character of wrongful act on the part of defendant calculated or intended to provoke a difficulty; (3) that in this connection it was the duty of the court to group the facts on which he predicated said charge, and embrace them in the charge; (4) and, furthermore, that the charge of the court made appellant's right of self-defense, in connection with provoking the difficulty, depend upon his apparent, and not his real, intention." Of course, no one would contend, in every case where self-defense is interposed to a charge of felonious homicide, "that this right," which, as has been well said, "is the natural and inalienable right of every human being, and is to be held sacred and inviolable by any law of human or civil institution," should be limited or cut off by the doctrine of provoking a difficulty. In Abram's case, 36 Texas Criminal Reports, 46, the doctrine of provoking a difficulty was characterized as in the nature of an estoppel; that is, the effect of the evidence suggesting provocation was to cut off the right of self-defense by estopping a defendant to claim the same because of his acts in bringing on the conflict. Before a defendant can be deprived of his perfect right of self-defense, when the evidence raises that issue, there must then be testimony showing that he did some act to produce the occasion, and bring on the conflict. As we said in Cartwright's case, 14 Texas Criminal Appeals, 502: "It would follow, therefore, that the conduct of the party must show that he knowingly and willfully used language or did acts which might reasonably lead to an affray or deadly conflict, and that something besides merely going to the place where the person is slain with a deadly weapon for the purpose of provoking a difficulty, or with an intent of having an affray, is required, in order to constitute such wrongful act." Of course, the act of provocation will depend upon the peculiar circumstances of each case; but we cull from the authorities that the act must be a hostile act, reasonably calculated to produce the occasion or bring on a difficulty, and it must have been so intended by appellant. To illustrate: A. has a grudge against B. He arms himself, and goes to a place where he knows he will meet B. He knows, or has reason to believe, that B. will resent an insult. He curses and abuses B. B. resents the insult, and makes an assault upon A., whereupon A. shoots and kills B. Now, if A. sets up self-defense, it would be the duty of the court, in giving a charge on that subject, to also give a charge on provocation, limiting A.'s right of self-defense. What a proper charge on this subject should be has been frequently discussed, but the cases in this State are not altogether harmonious; some of them going to the extent of holding the court should group the facts, and predicate his charge thereon. Carter v. State, 37 Texas Crim. Rep., 403; Mozee v. State (Texas Crim. App.), 51 S. W. Rep., 250. We believe these cases go too far; indeed, it would frequently be found impracticable to indicate the facts, or to charge upon them, without danger of charging on the weight of testimony. Of

course, there are cases in which such a charge can be predicated upon the facts. While it is sound doctrine that in every case where the facts authorize a charge on provoking the difficulty, the judge should be able to indicate from the evidence the act of provocation (Morgan v. State, 34 Texas Criminal Reports, 222), yet it is not necessary to submit the words or the particular acts of the defendant. Alexander v. State, 40 Texas Crim. Rep., 395. When a judge, after hearing the testimony, is enabled to say therefrom that there is evidence tending to show that a defendant provoked a difficulty for the purpose of slaying his adversary or doing him some serious bodily injury, and self-defense is set up, then he is authorized to give a charge on provocation, limiting the right of self-defense. A charge on this subject should be couched in general terms (Gonzales v. State, 30 Texas Criminal Appeals, 265), that is, we mean that the court should instruct the jury in effect that, if defendant sought the occasion for the purpose of slaying his adversary (if he did so), and, having found him, did some act, or used some language, or did both, as the case may be, with the intent to produce the occasion and bring on the difficulty, and that the same, under the circumstances, was reasonably calculated to provoke a difficulty, and on such account his adversary attacked him, and he then killed his adversary in pursuance of his original design, then such killing would be murder of either the first or second degree. We would not be understood in the above as formulating a proper charge, but merely as suggesting the essential elements which it should contain. The charge in question does not, in terms, embrace all these elements. For instance, it does not submit to the jury that the circumstances must be such as were reasonably calculated to bring on the difficulty. While in fact the circumstances must be reasonably calculated to bring on the difficulty, and a judge, as a matter of law, must be able to say so, yet the charge need not embody this. And again, the charge as given requires that the "difficulty was provoked with the apparent intention of taking the life of deceased." And this particular portion of the charge is objected to on account of the word "apparent," appellant interpreting it to signify less than an actual intent or purpose. We take it that this language is taken from our Code (article 708, Penal Code), and has as strong a meaning as "actual;" it means "evident," "obvious," "clear." The charge as given, taken altogether, may be sufficient, though we would not commend it as a proper charge on this subject.

But the question occurs, was the court authorized to give a charge on provoking the difficulty, in connection with the charge on self-defense? A careful examination of the facts does not indicate, to our minds, that there was sufficient evidence of provocation to justify the court in giving the charge on that subject. It may be that the State was handicapped by being compelled to prove the facts that immediately attended the killing by appellant's own family. However that may be, we are to determine the propriety of the charge in question by the facts bearing on that subject. There were but three witnesses

who testified to the facts attending the homicide. Mrs. Allie Latham, sister of appellant, and her husband, Monroe Latham, were introduced by the State; and Early McCandless, brother of appellant, was introduced by him. All that the State's witnesses disclose on this subject with reference to the meeting of the parties at the time of the difficulty shows that deceased was passing the house of Monroe Latham, where appellant was; that when appellant saw him coming down the road he was sitting in the yard with Monroe Latham, and his brother, Early; that appellant said: "Yonder comes Mr. Walton. I believe I will go and ask him if he has any objection to my getting my plow tools." Appellant got up, and walked to the front yard fence, and stepped over it just west of the front gate, and spoke to Walton in a friendly manner. Appellant then asked him something about a new buggy. Monroe Latham did not understand the reply, but Mrs. Latham understood Walton replied that he got it out of a hollow log. These parties heard and saw no more of the transaction preceding the shooting, as they then went together to the wood pile. Early McCandless went with his brother to the gate, as he says, to take the saddle off the horse, which he was going to leave there, and then ride the horse home. He relates what occurred substantially as follows: As deceased, Walton, approached, Charley got up, and said he would go and see if Walton had any objection to his getting his plow tools, and arose and walked out towards the front fence, and stepped over the wire a little west of the gate, and spoke to Walton. He said, "Good morning." He then asked Walton where he got his new buggy, but witness did not understand Walton's reply. That he walked out to where his horse was hitched, and about that time he heard his brother say: "Mr. Walton, what I wanted to see you about is whether or not you have any objection to my going down and getting my plow tools." Walton replied, "By God, you can't get anything unless you get it by law, as you commenced that way." Charley replied: "All right, Mr. Walton. I need not expect anything without going to law, from the principle with which you have treated me." As appellant said this, he turned around away from the buggy, and made a step or two towards the house. Walton said, "God damn you, I have treated you with a damn sight more principle than you have treated me; for, God damn you, you have got none." Charley then turned towards Mr. Walton with his left hand extended, shaking his finger at him, and said, "Don't talk to me that way, Mr. Walton." Walton said, "God damn you, I'll talk to you any way," and, as he said this, sprang out of the buggy on the south side, threw his left hand to his left hip pocket under his coat, as if to draw a pistol, and then rushed around in front of his horse and picked up a large rock in his right hand, about three feet in front of his horse, and turned with it, drawing the rock back in his right hand in a position to strike with it, and, with his left hand still in his hip pocket, drawing it up and down as if in the act of drawing a pistol, advanced upon Charley. Charley walked backwards, saying, "Stop, I'll hurt you," and drew his

pistol, and pointed it at Walton. Walton then said, still advancing on Charley, "God damn your gun." Witness said, "Look out, Charley, he is going to shoot," and just then the pistol fired. Now, this is all that we cull from the evidence that occurred at the time. True, the State proved that appellant had a grudge against deceased in regard to the possession of a piece of land, and that deceased had succeeded in getting possession of the land; that appellant had made recent threats against him; and there was some testimony from the State suggesting that appellant may have known deceased was coming that way on that particular morning, and would pass the house, inasmuch as Early Mc-Candless was up the road, and passed by George Walton's (brother of deceased) that morning before he came to Monroe Latham's; that deceased was at George Walton's, and Early McCandless may have seen him; and when he stopped at Monroe Latham's then told his brother that deceased was at George Walton's and would likely pass on his way to church. But this, we think, is speculating, and is absolutely denied by the witness Early McCandless; that is, he testified that he did not see deceased at George Walton's, and did not know there was church on that day, and consequently could not have told his brother at Monroe Latham's that deceased would pass that way to church in a short time. Assuming, as we reasonably can, that appellant entertained a grudge against deceased on account of the land, yet there is no testimony indicating that he knew deceased was to pass Monroe Latham's that morning, or that he was out in the yard on that particular occasion in pursuance of a conspiracy or plan to kill deceased. All that we know from the evidence is what the witnesses relate; and that merely shows that, when he saw deceased coming down the road in a buggy, he approached him in a perfectly friendly manner (although he was armed at the time, and his object in carrying arms is not disclosed), and he made no hostile demonstration towards deceased, but asked him (as he had a right) if he could get his plow tools off the place. Deceased replied to him in an abrupt manner. The testimony shows that appellant retorted, but he started to leave deceased, and deceased began to curse and abuse him, jumped out of his buggy, making a demonstration as if to draw a pistol, seized a rock, and if the evidence is to be believed, made an assault on appellant, who shot him. It occurs to us that, as far as appellant was concerned, this was a casual meeting. He approached deceased on a peaceful mission, and he said and did nothing calculated to provoke or bring on a difficulty so as to cut himself off from the right of self-defense. As said before, whenever a judge, by his charge, proposes to deprive a defendant of his right of self-defense, he must be enabled to lay his hand on the facts which justify him in doing so; and, unless he can, he should abstain from giving a charge of this character, because, however groundless the charge may be, coming as it does from the court, it is calculated to make the jury believe that, in the opinion of the judge, there was evidence tending to show that appellant brought on the difficulty for the purpose of slaying his adversary; and consequently

such an instruction, not authorized by the testimony, is calculated to injure or impair the rights of the defendant. Thomas v. State, 34 Texas Crim. Rep., 481. The judgment is reversed, and the cause remanded.

*Reversed and remanded.*