

# NUMBER 13-18-00347-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

STANLEY POLK,                                                             Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

### On appeal from the 264th District Court
### of Bell County, Texas.

# MEMORANDUM OPINION
### Before Chief Justice Contreras and Justices Benavides and Longoria
### Memorandum Opinion by Justice Benavides

Appellant Stanley Polk appeals his Bell County[1] conviction for the murder of

Ronald Ruiz, a first-degree felony.   *See* TEX. PENAL CODE ANN. § 19.02.   By two issues,

Polk argues he suffered egregious harm from the trial court's failure to include an

---

[1] This cause is before the Court on transfer from the Third Court of Appeals in Austin pursuant to an order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001.   Because this is a transfer case, we apply precedent of the Third Court of Appeals to the extent it differs from our own.   *See* TEX. R. APP. P. 41.3.

instruction on the presumption of reasonableness in the self-defense jury instruction and from the trial court's instruction on provocation that limited his right to self-defense. We affirm.

## I. BACKGROUND

Polk and Ruiz were employed by Werner Enterprises as truck drivers. Polk was an experienced driver but was a new hire. Werner's policy required newly hired experienced drivers to spend time with a trainer before being assigned a truck for solo trips. Ruiz was Polk's trainer. The two departed California and were on the road together for about a week, living in the cab of the truck. When they stopped to rest, they both slept in the truck, which had double bunks. Sometimes they stopped at truck stops or loading yards, but more often they stopped at rest stops where there were fewer people, which, according to Polk, Ruiz preferred. According to Polk's testimony at trial, Ruiz was depressed and grieving for his wife who died some years before.

Polk testified that on the days before August 27, 2015, Ruiz became more and more despondent and became angry for no apparent reason. As an example, Polk described a time when Ruiz was using his computer and Ruiz suddenly threw the computer against the cab wall of the truck, breaking it.

During the week the men were together, Polk called Werner's offices several times complaining that he did not need training. Ruiz did not call often, but in his second conversation with Werner fleet personnel, Ruiz asked to be relieved of Polk. Ruiz and his supervisor decided Polk could be left at the Werner terminal in Dallas. The men were traveling north on Interstate 35, north of Austin, when they pulled into the rest stop in

2

Salado and changed drivers. According to Polk's testimony at trial, Ruiz, who was in the driver's seat, allegedly became very angry with Polk, pulled his knife, and told Polk to "get his black ass off his truck" and that Polk was worse than "the last nigga I had on my truck." Polk testified that he was scared, grabbed Ruiz's left hand, pulled his own knife out to defend himself, and "stabbed at" Ruiz. Ruiz got the driver's door open and left the cab. According to Polk, Ruiz walked away and received medical help from other truckers parked at the rest stop. Polk walked to the men's restroom and washed his hands and knife. He spoke to another man, Jose Gutierrez, in the men's room and then heard sirens. He was still scared. He hopped over the rear fence at the rest stop and started walking. He was stopped ten hours later and arrested by a State trooper. He gave a statement to the trooper claiming self-defense.

At trial, the State presented multiple witnesses from the rest stop who described Ruiz's emergency medical treatment at the scene. Several truckers and emergency medical personnel tried to save him, but he was pronounced dead shortly after he arrived at the hospital by air ambulance. Ruiz died of the stab wounds he received.

The medical examiner, Candace Shoppe, M.D., testified that Ruiz had seventeen sharp force injuries (twelve stab wounds and five incised wounds). Ruiz had multiple stab wounds to his chest: one that penetrated two and a half inches, another two-inches-long that penetrated his right lung, a five-inch-deep wound that penetrated into his right chest; and a seven-inch-deep chest wound that penetrated the upper lobe of his right lung and right pericardial sac. He also had a stab wound to his abdomen, a seven-inch-deep wound that penetrated the left omentum and the transverse colon. In addition, Ruiz

3

sustained multiple wounds to his left arm that incised a one and a half inch segment of the radial artery. Ruiz's left hand had cuts to his second and third fingers on the palmar surface. Two of Ruiz's wounds were under his left armpit on the chest. Ruiz's toxicology screen was clean. Dr. Shoppe testified that Ruiz died from multiple stab wounds. Dr. Shoppe also testified that some of the wounds and the petechiae in Ruiz's eyes that she observed most likely occurred only if Polk was stabbing Ruiz "from behind or close to the side, right side." The cut to Ruiz's radial artery was large enough that "[w]ithout immediate compression or a tourniquet you would bleed to death from that within less than ten minutes."

Nicole Reeves, a trucker who was parked next to Ruiz's truck, testified that she came out of the rest room at the Salado rest stop and was headed to her truck when she heard a man screaming for help. She saw him trying to get out of the driver's side of his truck, but someone was "holding him in there and attacking him." Reeves testified she saw a black man "swinging around" with his right hand across Ruiz's chest. Eventually Ruiz freed himself, got out of the truck, and walked towards Reeves. There were two men leaving the restrooms walking towards the parked trucks behind Reeves, but Ruiz got to Reeves first. Ruiz was having a hard time breathing and was grabbing his chest and arm. She observed cuts all over him. Ruiz's hands were up while he walked towards her and she saw nothing in his hands. Reeves called 911. While she called 911, the other truckers were putting pressure on Ruiz's wounds trying to stop the bleeding. Ruiz told Reeves that his student Stanley Polk attacked him. She saw Polk "exit the truck, walk in front of [it], and my truck like he was coming towards us and then I

4

guess he saw the other two drivers coming to help us and he turned around and ran off." Reeves saw a knife sheath on Ruiz's belt, but did not see an open knife. Jose Santos, who was parked nearby, had a dash cam that took video of portions of the events that night. Both Ruiz and Polk appear on the video that was played for the jury.

Derek Leif with Werner Enterprises testified that he spoke to Ruiz over their radio system on August 26 and 27, 2015, and could tell that Ruiz and Polk were not getting along. Ruiz told Leif on the first call that Polk was not listening to him, but Ruiz would try to keep working with him and would keep Leif updated. Leif spoke to Ruiz the second time at about 5 p.m. on August 27, 2015. Ruiz was stopped; and could not drive again until after midnight to remain in compliance with trucking regulations. In that conversation, Ruiz told Leif that he and Polk would not be able to continue to work with each other. They had to decide how to get Polk off the truck. Their conclusion was for Ruiz to take Polk to one of the Werner terminals in Dallas. According to Leif, Ruiz sounded frustrated. During the conversation with Leif, Ruiz was being interrupted by someone in the background and the two were arguing. Leif could not hear the substance of the conversation. The plan Leif and Ruiz developed would have resulted in Polk spending the night in Dallas and then a new trainer would be found for him. Polk would not have lost his job. According to Leif, trainers and students do not always get along and the company accommodates them by getting them a new trainer.

Polk and Stephen Thorne were defense witnesses. Thorne holds a doctorate in psychology and testified about the effect of adrenaline on a person who becomes scared for their life.

5

Polk testified that he lived in Las Vegas, and worked out of Werners Fontana, California yard. He testified about his family including his seven children, multiple grandchildren, his certificates in Christian ministry, and his religious beliefs. He believed that Werner's would be assigning him his own truck as soon as he got back to California to take his testing and that he was nearly finished with training. Polk did not want to go to Dallas; he "wanted a truck."

During the charge conference, the defense requested an instruction on voluntary manslaughter that the trial court declined to give. There were no other objections to the jury charge nor request for other or different instructions.[2]

The jury found Polk guilty of murder. During punishment, the jury was instructed on "sudden passion arising from an adequate cause," which if found by the jury would have reduced the offense to a second-degree felony. *See* TEX. PENAL CODE ANN. § 19.02(d). The jury declined to find sudden passion and sentenced Polk to fifty years' imprisonment. Polk appealed.

## II.   CHARGE ERROR

By two issues, Polk argues that jury charge error caused him egregious harm. First, he claims that the jury should have been instructed on the presumption of reasonableness with respect to his claim of self-defense. *See* TEX. PENAL CODE ANN. § 9.32. Second, Polk argues that the trial court should not have included an instruction on provocation because it limited his claim of self-defense. At trial, Polk did not object to

---

[2] The night before, the parties discussed the charge briefly with the trial judge. The State represented that self-defense was in the charge, and the defense and the State agreed they would get together and work on the charge.

the jury instructions on either ground.

## A.    Standard of Review

A trial court has a duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged.    See TEX. CODE CRIM. PROC. ANN. art. 36.14; *Taylor v. State,* 332 S.W.3d 483 (Tex. Crim. App. 2011); *Oursbourne v. State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008).    However, that requirement does not include a *sua sponte* duty to prepare a jury charge that includes all defensive issues, unless a rule or statute "*requires* an instruction under the particular circumstances," in which case, it becomes the "law applicable to the case."    *Oursbourne*, 259 S.W.3d at 179, 180 (emphasis in original).    "The Penal Code requires that a presumption that favors the defendant be submitted to the jury if there is sufficient evidence of the facts that give rise to the presumption . . . unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact."    TEX. PENAL CODE ANN. § 2.05(b)(1); *Villarreal v. State*, 453 S.W.3d 429, 431 (Tex. Crim. App. 2015); *see also Preston v. State*, No. 03-16-00573-CR, 2018 WL 3447713, at *7 (Tex. App.—Austin July 18, 2018, no pet.) (mem. op., not designated for publication).    In addition, "[a] defendant is entitled, upon a timely request, to an instruction on any defensive theory raised by the evidence."    *Rogers v. State*, 105 S.W.3d 630, 639 (Tex. Crim. App. 2003); *Brown v. State*, 955 S.W.2d 276, 279–80 (Tex. Crim. App. 1997).

A trial court has broad discretion in submitting instructions and definitions to the jury.    *See Nejnaoui v. State*, 44 S.W.3d 111, 119 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).    A trial court abuses its discretion when it acts without reference to guiding

principles or rules and outside the wide zone of reasonable disagreement.  *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993).

When a defendant does not object to alleged jury charge error, as here, we may reverse only if the error was fundamental, or stated another way, "it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal*, 453 S.W.3d 433.  "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory."  *Id.*  Egregious harm is a "high and difficult standard to meet."  *Id.*  To determine whether charge error has resulted in egregious harm to a defendant, "we consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole."  *Id.*; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

## B.    Applicable Law

Texas law includes a justification defense and codifies a presumption that deadly force is reasonable if used to protect oneself from the attack of another or in other specified circumstances not present here:

(a) A person is justified in using deadly force against another:

(1) if the actor would be justified in using force against the other under Section 9.31;[3] and

---

[3] "(a) Except as provided in Subsection (b), a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. . . . "  TEX. PENAL CODE ANN. § 9.31(a).

8

(2) *when and to the degree the actor reasonably believes the deadly force is immediately necessary*:

> (A) *to protect the actor against the other's use or attempted use of unlawful deadly force*; or
>
> (B) *to prevent the other's imminent commission of* aggravated kidnapping, *murder*, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

(b) *The actor's belief under Subsection (a)(2) that the deadly force was immediately necessary* as described by that subdivision *is presumed to be reasonable if the actor:*

> (1) *knew or had reason to believe that the person against whom the deadly force was used*:
>
> > (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;
> >
> > (B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or
> >
> > (C) *was committing or attempting to commit an offense described by Subsection (a)(2)(B)*;
>
> (2) did not provoke the person against whom the force was used; and
>
> (3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

9

(c) A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described by this section.

(d) For purposes of Subsection (a)(2), in determining whether an actor described by Subsection (c) reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat.

TEX. PENAL CODE ANN. § 9.32 (emphasis added).

## C.     Omission of Presumption of Reasonableness

Polk complains for the first time on appeal that the jury instructions did not include an instruction on the presumption that his use of deadly force was reasonable pursuant to § 9.32(b). *Id.* Although the jury instructions did not include the presumption, the instructions included the following: "A person is justified in using deadly force against another . . . when he reasonably believes that such force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force." A "[r]easonable belief" is that which "would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42).

The jury rejected Polk's claim of self-defense. Polk argues that because the jury was not advised of the presumption that he acted reasonably, the jury was likely misled, which caused him egregious harm.

First we must determine whether Polk was entitled to the instruction, i.e. whether there was evidence to support the instruction on the presumption. *See Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011); *Starks v. State*, 127 S.W.3d 127, 132 (Tex.

10

App.—Houston [1st Dist.] 2003, pet. ref'd). According to Polk, Ruiz took out his knife and, using racial slurs, told Polk to get out of the truck. Polk further testified that Ruiz popped his knife out, and "just lashed right off and came at me." Polk argues that Ruiz's conduct supports the presumption based upon Polk's asserted reasonable belief that Ruiz would murder him. *See* TEX. PENAL CODE ANN. § 9.32(b) We agree that the evidence supports an instruction on the presumption of reasonableness of Polk's conduct and that failure to do so was error.

Because Polk did not object to the omission of the instruction, we review for egregious harm. *See Almanza*, 686 S.W.2d at 171. In weighing the factors to determine whether there was egregious harm, the first factor is the entirety of the jury charge. *Id.* The jury was instructed on self-defense, just not on the presumption. The application paragraph properly instructed the jury that if they had reasonable doubt about whether Polk acted in self-defense they must acquit him. Thus, the jury was properly instructed on the justification portion of his self-defense claim, which they rejected. If the omitted instruction had been properly given, "a complete instruction on the presumption of reasonableness would have also informed the jury that, under some circumstances, an actor is not entitled to the benefit of the presumption." *See* TEX. PENAL CODE ANN. § 9.32(b); *Villarreal*, 453 S.W.3d at 435. The omitted instruction would have permitted the jury to disregard the presumption if it concluded, among other things, that Polk had no reason to believe that Ruiz was attempting to commit murder. As a result, this factor weighs against a finding of egregious harm. *See Villarreal*, 453 S.W.3d at 435.

11

The second factor includes the weight of the probative evidence. *Almanza*, 686 S.W.2d at 171. Only Polk's testimony supported his claim of self-defense, but his testimony was contradicted by substantial physical evidence and witnesses with no stake in the outcome. Reeves saw Ruiz trying to get away from Polk, saw Polk's arm around Ruiz's neck or chest, and saw that Ruiz had nothing in his hands when he left the cab of the truck. Leif heard Polk and Ruiz having a heated argument. Ruiz's knife was found closed in his pocket with no blood on the blade and only Ruiz's blood on the outside of the knife, which was consistent with the blood soaking through his pocket, according to the forensic technician. Photographs of the Werner truck cab showed that all of the blood was on the driver's side of the cab. Polk had only a scratch on his wrist, and none of Polk's blood was on Ruiz's knife. Ruiz sustained seventeen knife wounds including two on the front of his neck and two on the back of his neck, shown in the photographs. The medical examiner testified that the direction of the wounds suggested that Ruiz's wounds were inflicted by someone behind or on his right side. Furthermore, Jose Gutierrez who spoke to Polk in the restroom in Salado described Polk as calm, which contradicted Polk's testimony that he was scared for his life. The evidence on this factor weighs heavily against egregious harm. *See Villarreal*, 453 S.W.3d at 439 (concluding that substantial evidence contradicting defendant's claim of self-defense weighed against egregious harm).

The third factor we consider to determine egregious harm is argument of counsel. *Id.* Defense counsel argued that Polk had a reasonable belief he was under attack by Ruiz and brought an expert to explain how people react to fear, stress, and adrenaline.

12

Counsel also argued that the conduct of the dispatcher and the emergency personnel contributed to Ruiz's death by discouraging on-scene helpers and from using a tourniquet to stop the bleeding in his left arm. Although that argument is not a legal defense that could result in acquittal under the jury charge, counsel may have thought it would sway the jury.

The State argued that all of the evidence, other than Polk's testimony, contradicted Polk's claim of justification and self-defense. The State further argued that Polk did not stay at the scene to tell anyone that he acted in self-defense, but instead had ten hours to decide what to say. The jury rejected Polk's justification defense, and we do not find that the error in failing to give Polk the instruction on the presumption of reasonableness egregiously harmed him. *See Villarreal*, 453 S.W.3d at 435.

In *Villarreal*, the San Antonio court of appeals reversed a murder conviction after holding that failure to give an instruction on the presumption of reasonableness caused egregious harm. 453 S.W.3d at 432. The court of criminal appeals reversed, holding in part that the defendant's claim of self-defense was contradicted by the record such that the lack of instruction did not result in egregious harm. *Id.* at 441, 443.

Thus, although self-defense was Polk's only defense, the only evidence supporting that defense was his own testimony and it was contradicted by all of the other evidence in the record. As a result, we do not find that Polk sustained egregious harm as a result of the omission of an instruction on the presumption of reasonableness of his use of force. *See id.* Accordingly, we overrule Polk's first issue.

13

## C.    Inclusion of Provocation Instruction

By his second issue, Polk argues that he suffered egregious harm from the inclusion of what he claims was "an unwarranted instruction" on provocation because it "limited or barred" his claim of self-defense.   A charge on provocation is required when there is sufficient evidence (1) that the defendant did some act or used some words which provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other.   *Elizondo v. State*, 487 S.W.3d 185, 197 (Tex. Crim. App. 2016); *Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998); TEX. PENAL CODE ANN. § 9.31(b)(4).   A provocation instruction should be submitted to the jury only "when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt." *Smith*, 965 S.W.2d at 514.   "[T]he jury must merely be able to find that there was some provoking act or words. This protects the defendant's right of self-defense, while adhering to the principle of the law of provocation."   *Id.* at 515.   Circumstantial evidence can support this finding.   *Id.*

The jury instruction on provocation here immediately followed the instruction on self-defense and stated:

Except, the use of force against another is not justified:

In response to verbal provocation alone,

> If the actor provoked the other's use or attempted use of unlawful force, unless the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the

14

> encounter; and the other nevertheless continues or attempts to use unlawful force against the actor.

*See* TEX. PENAL CODE ANN. § 9.31(b)(4).

The instruction on provocation is followed by an instruction on justification without provocation. The application paragraph does not include provocation, only self-defense, and the prosecutor's closing argument did not reference provocation, but argued that Polk's claim of self-defense was not supported by any evidence other than Polk's testimony and was directly contradicted by all of the other evidence.

The trial evidence established that Polk was arguing with Ruiz while Ruiz was speaking with his supervisor about getting Polk off his truck. Ruiz and the supervisor concluded that Ruiz could drop Polk off at the Werner hub in Dallas. Polk did not testify to anything that could be considered provocation. After the call with Ruiz's supervisor ended, Ruiz allegedly used racial slurs against Polk and allegedly drew his knife, although there was no physical or independent evidence that Ruiz's knife was in his hand during the stabbing.

We agree with Polk that the trial evidence does not support the instruction and it should not have been submitted. *Cf. Smith v. State*, 965 S.W.2d 509 (Tex. Crim. App. 1998) (setting out facts that support provocation instruction). Because Polk did not object, we review for egregious harm. *See Almanza*, 686 S.W.2d at 171.

Polk cites *Elizondo*, *Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013), *Tave v. State*, 620 S.W.2d 604 (Tex. Crim. App. 1981), and *McCandless v. State,* 57 S.W. 672 (1900), in support of his claim that the instruction on provocation caused egregious harm. However, *Elizondo*, and *Reeves* are cases in which defendants objected to the

jury charge.   487 S.W.3d at 209; 420 S.W.3d at   816.   Both *Tave* and *McCandless* predate *Almanza* and its harm analysis.[4]   620 S.W.2d at 606; 57 S.W. at 675.

In *Elizondo*, the court of criminal appeals concluded that the objected-to instruction was not supported by evidence and caused some harm because the instruction on provocation was incorrect, "misleading, and confusing."   487 S.W.3d at 208.

In *Reeves*, 420 S.W.3d at 816, the State conceded that the objected-to provocation instruction was error.   *Id.*   The court of criminal appeals reversed because the entirety of the charge was confusing, the provocation instruction was incorrect, the State's closing argument misstated the law and may have unduly influenced the jury.   *Id.* at 821.   As a result, the court found some harm.   *Id.*

The record here does not show that the State relied on provocation.   No one mentioned provocation during closing.   Moreover, provocation was not included in the application paragraph and as such, it did not limit Polk's right of self-defense.   *See Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012) (describing application paragraph which specifies the factual circumstances under which the defendant may be convicted or acquitted as the "heart and soul" of the jury charge); *see also Shivers v. State*, No. 07-03-0521-CR, 2005 WL 991304, at *3 (Tex. App.—Amarillo Nov. 15, 2006, pet. ref'd) (mem. op., not designated for publication) (holding no egregious harm from provocation instruction where neither side argued provocation during guilt/innocence phase of trial); *Obennoskey v. State*, No. 05-95-00993-CR, 1998 WL 23704, at *7 (Tex. App.—Dallas Jan 21, 1998, pet. ref'd) (mem. op., not designated for publication) (holding

---

[4]  *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).

16

error not egregiously harmful where State did not rely on provocation and application paragraph did not include provocation)..

We agree with Polk that the instruction was error, but do not find egregious harm. The issue was not addressed, much less emphasized during closing by either party. We overrule Polk's second issue.

### III.    CONCLUSION

We affirm the judgment of the trial court.


GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
8th day of August, 2019.