### Ned Carter v. The State.

*No. 969. Decided April 22nd, 1896.*

**1. Continuance.**

On a trial for murder, where a first application for continuance is in conformity with law, and the evidence is material and probably true, it is no valid reason (where diligence is also shown) for its refusal that "there were other eye-witnesses in attendance upon the court." Following, Clark v. State, 33 S. W. Rep., 224.

**2. Murder—Provoking Difficulty—Charge.**

On a trial for murder, where it appeared that defendant, with a deadly weapon in hand, by words and insulting language, provoked the difficulty with a view of slaying his adversary, and did slay him; the court should have instructed the jury, that,

if they believed, from the testimony, that defendant, with a deadly weapon ready for immediate use, provoked the difficulty with the purpose of obtaining a pretext for slaying the deceased, he would be guilty of murder.

### 3. Same—Mutual Combat—Manslaughter.

Where defendant entered into a mutual combat (simple assault and battery), and his adversary and others used more force than he contemplated, whereupon he resorted to a deadly weapon and slew his adversary, the homicide would be manslaughter, and the court should submit the law of manslaughter in the charge.

### 4. Same—Provoking Difficulty—Intent of Defendant—Charge.

A charge upon provoking a difficulty should not be couched alone in general abstract propositions, but should make a direct application of the law to the facts in the case; and it is not proper to leave the jury to select and pass upon the supposed unlawful or wrongful acts of defendant; the court should charge hypothetically upon the acts constituting the provocation. And, the main question for the decision of the jury being the intent of defendant in provoking the difficulty, the charge of the court should, in all cases, submit the question of the intention with which the provocation was given. The general rules are: (1) If the defendant provoked the difficulty or produced the occasion for the purpose of inducing his adversary to make the attack so that he could kill him, this is murder. (2) If there was no felonious intent, and defendant is forced to kill to save his life, this is manslaughter. (3) If there was no intention to have a difficulty, defendant's right of self-defense remains complete.

### 5. Same—Self-Defense Where There are Several Assailants—Charge.

On a trial for murder, where there was evidence to the effect that, while one M. was making an unlawful attack upon defendant, other parties, N. and R., who were present and knew the facts, interfered in behalf of M., and defendant killed R. Held: Defendant was entitled to an instruction to the effect, that he had the same right of self-defense against these parties as he would have against M.; and, if the appearances were such as to cause a reasonable belief, by defendant, that deceased was a party to the attack upon him, or about to be made upon him, by all or either of the parties, the defendant's right of self-defense would extend to the acts of each and all of said parties.

### 6. Same—Apparent Danger—Standpoint of Defendant—Special Instructions.

Upon the facts, above stated, the court erred in refusing to give a special instruction to the effect that defendant would have the same right to defend against apparent, as well as real, danger, and that, in passing upon the facts, it was the duty of the jury to view the facts from the defendant's standpoint, and judge of them as they appeared to him at the time of the difficulty, as disclosed by the evidence.

APPEAL from the District Court of Falls. Tried below before Hon. S. R. SCOTT.

Appeal from a conviction for manslaughter; penalty, five years' imprisonment in the penitentiary.

Appellant was indicted for the murder of one Louis Reineke, by cutting and stabbing him with a knife, in Falls County, on the 14th of October, 1895. Appellant is a negro and the deceased was a German. The difficulty began between defendant and one Miesch, a German, and occurred in Radle's saloon, in the village of Perry. Miesch and other German friends, deceased being one of them, were in the saloon, and about to take a drink of beer, when defendant came in with an open knife in his hand, according to the State's testimony. Defendant testified in his own behalf, and his testimony is corroborated, in many particulars, by his witnesses; and, as to the immediate origin of the dificulty, there is but little substantial difference between his testimony and that of the

main State's witnesses. To a proper understanding of defendant's theory of the case, it is only necessary to give his version of the difficulty as found in his examination in chief, which is as follows: "I know M. Miesch, Louis Reineke, August Bier and Fritz Newman, and have lived about four years near the German settlement where all of these people live, all of whom are Germans. I have known Louis Reineke since 1893, and all of the others about the same length of time. I have worked for Mr. Miesch a great deal and have picked cotton for him. I was in Perry, at Radle's saloon, on the day of the difficulty. As I walked into the saloon, some beer had been ordered, and I spoke to Mr. Miesch and asked him what about my beer; he said, he had no beer for me, to go into the negro saloon for it. I told him no, that I had a right in there; he then put his hand under my chin, and I pushed his hand off. He then hit me in the face and I hit at him. Three parties then grabbed up chairs, to-wit: Louis Reineke, Fritz Newman and M. Miesch. There was a great many in there at the time Miesch hit me with his fist, and the others began to hit me in the rear on the back. While looking around and backing some one knocked me to my knees. Miesch then hit me in the back with a chair; and, two or three others were hitting me, and I can't say who they all were except those four named, all of whom jumped on me, after they had knocked me to my knees. Can't say whether others had chairs. I had my knife in my hand while talking with Mr. Hand, but not when I went up to Mr. Miesch, and did not pull out my knife until after I had been struck by Mr. Miesch and the others with the chairs. My knife was in my pocket until after I had been struck by Mr. Miesch and the others with chairs. I then reached down and got my knife out of my pocket and opened it with my teeth. I think I cut Mr. Miesch on the hand; in the right hand I think. Reineke was the second man who came up to me; he was about the door when I cut him. I had backed to the door striking and hitting at them as they would advance and come on me; and I was about the door when I cut him. Just before Miesch grabbed the chair, he turned around and said something in German to Reineke and the other Germans; and Miesch then got a chair and made for me. Two or three struck me with chairs, and Reineke hit me on the arm with a chair. I got my knife and recollect when I cut Miesch. After the first lick, I heard Meisch say, he has got a knife, "let's kill the son-of-a-bitch." I dodged among them and tried to make my escape. I saw Mr. John Breeland there. I was hit in many places, among others across the forehead, and was bleeding; blood was running all down my face on to my clothing. Three persons had chairs and were assaulting me. Mr. Reineke, Newman and Miesch. All of them had chairs and came together at me. I had no time to get out. I had bought the knife which I used on that day, and had had it in my hand during the afternoon showing it; it was a medium sized knife. I know Henry Lowe Kelton, and saw him at Perry on that day, but did not know that he saw the trouble. I did not see Mat Williams

'there, but did see Mr. John Breeland at the time of the row. I was friendly with all these parties, and never had had any trouble with any of them before. At the time I cut Louis Reineke, he had a chair and was striking me with it.

*Rice & Bartlett*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at imprisonment in the penitentiary for five years, and prosecutes this appeal. Appellant moved the court that the cause be continued for the want of the testimony of Mat Williams, John Breeland, and Henry Lowe Kelton. The affidavit in support of this motion, viewed in the light of the statement of facts in this record, shows that very important facts could be proved by the absent witnesses. There is no question about the diligence used to secure the attendance of the witnesses. The motion being overruled, the appellant excepted thereto, and reserved a bill of exceptions. Attached to the bill of exceptions is the reason of the court for overruling said motion, to-wit: "The court refused to grant the application on the ground that there were other eyewitnesses to the difficulty in attendance upon the court." This was the first application for a continuance. Appellant was entitled to any number of witnesses within the bounds of reason. This precise question arose in Clark v. State, 33 S. W. Rep, 224, and it was there held that the continuance should have been granted. There are several theories presented by the testimony in this case: First. That the appellant, with a deadly weapon—a knife—in his hand, open, by words and insulting language, provoked the difficulty with the view of slaying his adversary. Upon this theory, the court should have instructed the jury that if they believed from the testimony that the defendant, with a deadly weapon, ready for immediate use, provoked the difficulty, with the purpose of obtaining a pretext for slaying the deceased, he would be guilty of murder, and, we think, of murder in the first degree. That, however, should have been left to the jury. Second theory. That the defendant entered into a mutual combat—a simple assault and battery—and, being assaulted by his adversary and others with chairs, he resorted to a deadly weapon. The court should have instructed the jury upon this theory, to-wit: a mutual combat without intending to do serious bodily injury, and resorting to deadly weapons when more force was used by his adversary than he originally contemplated. The result of such a state of facts would be manslaughter. The theory presented by the testimony for the defense, by quite a number of witnesses, was that the appellant and one Miesch got into a wordy altercation about being treated to beer; that Miesch struck the appellant, who returned the blow, whereupon Miesch and his friends resorted to chairs, and had struck, and were in the act of repeating the

blows, when the defendant inflicted the fatal wound with a knife. This being so, it was a clear case of self-defense. The court instructed the jury in regard to provoking the difficulty as follows: "A party may have a perfect right of self-defense, though he may not be entirely free from blame or wrong in the transaction. If the blamable or wrongful act was not intended to produce the occasion, nor an act which was, under the circumstances, reasonably calculated to produce the occasion or provoke the difficulty, then the right of self-defense would be complete, though the act be not blameless. But you are further instructed that a party cannot avail himself of a necessity which he has knowingly and willingly brought upon himself. Whenever a party, by his own wrongful act, produces a condition of things wherein it becomes necessary for his safety that he should take life or do serious bodily harm, then the law imputes to him his own wrong, and its consequences, to the extent that they may and should be considered in determining the grade of his offense, if any, which, but for such acts, would never have been occasioned. How far and to what extent he will be excused or excusable in law depends upon the nature and character of the act he was committing, if any, which produced the necessity that he should defend himself. When his own original act was in violation of law, then the law takes that fact into consideration, in limiting his right of defense and resistance while in the perpetration of such unlawful act." This charge contains nothing but abstract propositions of law. There is no attempt to apply these principles, or any of them, directly to the facts of this case. The wrongful or unlawful act is not named. Let us suppose that the court had in mind the fact that the appellant had his knife drawn, and was using insulting language, and from these facts the jury might infer that he resorted to these means to produce the difficulty. If this was so, the court should have made a direct application of this principle of law to that phase of the case. It is not proper for the charge to leave to the jury to select and pass upon the unlawful or wrongful acts. The court should charge hypothetically upon the assumption that the jury should believe these acts to be true; telling the jury what would be the result in law, or of what offense he would be guilty. The jury might have believed, under this charge, that the appellant provoked the difficulty or produced the occasion by using insulting language to Miesch, a white man, or by persisting to drink beer with a white man, in a white man's saloon, the appellant being a negro. These acts would not compromit the appellant's right to full self-defense, though a difficulty was provoked thereby. Again, a party may be provoked into a difficulty, but the person giving the provocation does not lose his right of self-defense unless he intends to provoke the difficulty with the view of entering into a fight with his adversary. The main question for the decision of the jury is the intention with which the provocation was given, and this should be stated in the charge. In every case involving the question of provoking the difficulty, if the defendant provoked the difficulty or produced the occasion for the purpose of inducing his adversary

to make the attack, so that he could kill him, why this is murder.    If there is no felonious intent, the party intending an assault and battery, and he is forced to kill to save his life, this is manslaughter.    But, unless there is an intention to have a difficulty, his right of self-defense remains complete.    Some acts may be committed, of such a character as to carry the intent with them.    This, however, is a matter for the jury. The court should, in all cases, submit the intention with which the provocation was given; and the special instructions requested by appellant on this subject should have been given, or something similar.    We call attention to the special charges requested by the appellant and refused by the court, as follows: "And in this connection you are charged that if you believe from the evidence that the said M. Miesch had made, or was about to make, such an attack upon the defendant, and that while so engaged one Fritz Newman and one Louis Reineke, the deceased, was present, and, knowing the unlawful intent of the said M. Miesch, either acting together or alone, aided the said M. Miesch in such unlawful attack upon the defendant, then you are instructed that the defendant would have the same right to defend himself from the attack of either the said Newman or the deceased as he would against the said M. Miesch; or if the appearances were such as to cause, and did cause, in the mind of the defendant, a reasonable belief that the deceased was a party to the attack upon him, if any, or which was about to be made upon him by all or either of the aforesaid parties, the defendant's right of self-defense would extend to the acts of each and all of said parties, because in law the act of one would be the act of all; and, if you so believe, you will acquit the defendant, or, if you have a reasonable doubt thereof, you will acquit the defendant.    Now, in this connection, you are further instructed that the defendant would have the same right to defend against apparent as well as real danger, and, in passing upon the facts of this case, it is your duty to view the facts from the defendant's standpoint, and judge the same as they appeared to him at the time of the difficulty, as disclosed from the facts in evidence."    These instructions should have been given.    For the errors indicated, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*