### JOHN REED V. THE STATE.

No. 2742. Decided November 19, 1913.

**Murder—Mutual Combat—Manslaughter—Charge of Court.**

Where, upon trial of murder, the evidence raised the question of manslaughter from the viewpoint of mutual combat, the court should have submitted this phase of the case, and the failure to do so was reversible error; the defendant having been convicted of murder in the second degree. Following Carter v. State, 37 Texas Crim. Rep., 403, and other cases.

Appeal from the District Court of Eastland. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*D. G. Hunt* and *J. R. Stubblefield,* for appellant.—Cited cases in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—A brief summary of the evidence will show the defendant, who is about twenty years of age, killed Oliver Brown on the 9th of March, 1912. Brown was also a young man, about twenty-five or twenty-six years of age. Appellant was the owner of a dog which was killed in the pasture belonging to the father of deceased. In February, before the killing in March, defendant and the elder Brown were at a country school house one Sunday. Defendant made inquiry of the elder Brown as to who killed his dog, and made the statement while talking with him, that he could whip whoever killed his dog, and mentioned the name of deceased during the conversation. The elder Brown denied killing the dog. Appellant said that he or deceased killed him, or must have killed him. On the 9th of March appellant, in company with the two Campbell boys, Fayette and David, were en route to the town of Carbon on horseback when they met deceased driving a wagon. Appellant asked Brown if he had killed his dog. Brown said, "What have you got to say about it?" Appellant said he "could whip the son-of-a-bitch who killed his dog." Brown, the deceased, dropped

his lines and told appellant to get off his horse, which he did. As soon as appellant alighted from his horse deceased struck him on the head with a whip handle, and the parties engaged in a fight in the wagon. During the fight deceased had three knife wounds inflicted on him by appellant, from which he subsequently died. The parties separated, appellant going to Carbon and deceased drove away. Deceased was met by his brother directly, who took charge of the wagon and drove it home, deceased dying about thirty minutes after the difficulty and before he reached his father's home where he lived.

The conviction was for murder in the second degree, with a punishment of ten years allotted to him in the penitentiary. The knife used in the difficulty was a pocket-knife; no further description is given of the knife. It is also in evidence that when deceased struck appellant on the head with the whip handle appellant started towards the wagon or attempted to get in the wagon and deceased reached for and obtained a piece of iron, described as being a fishplate used in coupling railroad rails, and when he obtained this appellant says he stabbed or cut him with his knife. There was evidence pro and con that deceased had secured the piece of iron when cut. One of the Campbell boys testified practically as did appellant in regard to the difficulty. A brother of deceased was some two hundred and fifty yards away approaching the scene of the trouble at the time it happened.

The court gave a charge on both degrees of murder, manslaughter and self-defense. The charge on manslaughter is based upon the grounds: (1) An assault and battery causing pain or bloodshed; (2) a serious personal conflict in which great injury is inflicted by the person killed, by means of violence, etc.; (3) any condition or circumstance which is capable of creating and does create sudden passion, whether accompanied by bodily pain or not. The court says, "All of the above are deemed adequate causes. And where there are several causes to arouse passion, although no one of them alone might constitute adequate cause, it is for you to determine, from all the facts and circumstances in the case, whether or not all such causes combined, might be sufficient to do so." Appellant requested an instruction submitting substantially manslaughter from the viewpoint of mutual combat. The testimony has been sufficiently stated in this connection but to restate we find that the meeting was accidental. It is shown there was some feeling by appellant towards deceased on account of killing his dog, and it is shown he had threatened to whip him or the man who did kill the dog. The father of the deceased when asked by appellant denied it. When appellant met the deceased he asked him about it, and deceased said "What are you going to do about it?" Appellant said he could whip the son-of-a-bitch who killed his dog. Deceased said he would not take that and told appellant to get down from his horse. Appellant accepted, got off his horse and the fight began by deceased striking appellant the first lick with a whip handle on the head. When deceased invited him into the difficulty appellant accepted. This raised

the question of imperfect self-defense viewed from the standpoint of an affray or mutual fighting. If he entered into the fight not for the purpose of killing, appellant could not be guilty, under the circumstances, of a higher grade of homicide than manslaughter. If it be viewed from the standpoint of appellant provoking the difficulty or provoking deceased to extend him an invitation by using the expression "son-of-a-bitch" and if that was intended to provoke the difficulty and it was of no higher magnitude than an ordinary fight, and he was forced to kill under the circumstances detailed, from his viewpoint of it he still would not be guilty of a higher grade of homicide than manslaughter. Deceased struck the first lick with his whip handle. Appellant then got out his knife. Under those circumstances we are of opinion the court should have given the requested instructions. The issue presented by the charge requested was in the case. If the jury had been told what the law was under those peculiar circumstances, and viewed from that standpoint they might have convicted him of no higher grade of homicide than manslaughter. As it is, they gave him ten years for murder in the second degree. There is no evidence in the record of any threats except a whipping. Harris did testify that defendant said he and his knife could whip the deceased, but his testimony was withdrawn from the jury, and it does not even appear in the statement of facts. It was error on the part of the court to refuse this requested instruction. Carter v. State, 37 Texas Crim. Rep., 403; Delgado v. State, 34 Texas Crim. Rep., 157, 29 S. W. Rep., 1070; Habel v. State, 28 Texas Crim. App., 588, 13 S. W. Rep., 1001; Gray v. State, 55 Texas Crim. Rep., 90, 114 S. W. Rep., 635; Branch Crim. Law, sec. 468; Rose's Texas Notes, vol. 5, p. 1157.

There are some other matters arising with reference to empaneling the petit jury as well as the refusal of continuance, which will not likely occur upon another trial.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*