## Ex parte SIMPKINS.

(Court of Criminal Appeals of Texas. Nov. 19, 1913.)

HABEAS CORPUS (§ 113*) — APPEAL — DISMISSAL.

Where, on a hearing upon habeas corpus, accused was remanded to the custody of the sheriff who was directed to release him upon bond, and accused appealed, his appeal should be dismissed for want of jurisdiction if he afterwards submitted to the trial court's decision and entered into bond pursuant thereto.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 102–115; Dec. Dig. § 113.*]

Appeal from District Court, Grayson County; W. J. Mathis, Judge.

Habeas corpus proceeding by E. S. Simpkins. From an order remanding relator to custody, he appeals. Appeal dismissed.

C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, J. Appellant resorted to a writ of habeas corpus to relieve himself from an arrest based on a complaint and information charging him with keeping a disorderly house. Upon a hearing he was remanded to the custody of the sheriff, who was instructed to release him upon his giving bond. Appellant gave notice of appeal from the decision of the court, and the case was submitted. Since the submission appellant has concluded to accept the decision of the lower court and has entered into bond in pursuance of that conclusion. This fact has been made known to this court in a satisfactory way. This would dismiss the appeal for want of jurisdiction under the circumstances stated. This has been called to our attention by the attorneys on both sides and the sheriff and accompanying affidavit.

The appeal will be dismissed.

---

## REED v. STATE.

(Court of Criminal Appeals of Texas. Nov. 19, 1913.)

1. HOMICIDE (§ 63*) — MANSLAUGHTER — ABSENCE OF INTENT TO KILL—MUTUAL COMBAT.

On a trial for homicide, it appeared that accused and deceased met accidentally; that there was some feeling by accused towards deceased on account of the killing of a dog; that defendant had threatened to whip deceased or the man who killed the dog; that he asked deceased if he killed it, to which deceased responded by asking him what he was going to do about it; that accused said he could whip whoever killed the dog, applying an insulting epithet to such unknown person; that deceased said he would not take that and told accused to get down from his horse, which accused did; that deceased struck accused with a whip handle on the head; that accused drew a knife, and in the ensuing fight, in which deceased obtained or attempted to obtain a railroad fishplate, accused stabbed deceased. *Held*, that if accused entered into the fight with no purpose of killing he could not be guilty, under the circumstances, of a higher grade of homicide than manslaughter, and hence the court should have submitted manslaughter from the viewpoint of mutual combat.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 86, 87; Dec. Dig. § 63.*]

2. HOMICIDE (§ 36*) — MANSLAUGHTER—PROVOKING DIFFICULTY.

Though accused used such insulting epithet to provoke a difficulty, if he intended to provoke only an ordinary fight, and was forced to kill under the circumstances, he was not guilty of a higher grade of homicide than manslaughter.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 57; Dec. Dig. § 36.*]

Appeal from District Court, Eastland County; Thomas L. Blanton, Judge.

John Reed was convicted of murder in the second degree, and he appeals. Reversed and remanded.

D. G. Hunt and J. R. Stubblefield, both of Eastland, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, J. A brief summary of the evidence will show the defendant, who is about 20 years of age, killed Oliver Brown on the 9th of March, 1912. Brown was also a young man about 25 or 26 years of age. Appellant was the owner of a dog which was killed in the pasture belonging to the father of deceased. In February, before the killing in March, defendant and the elder Brown were at a country schoolhouse one Sunday. Defendant made inquiry of the elder Brown as to who killed his dog, and made the statement, while talking with him, that he could whip whoever killed his dog, and mentioned the name of deceased during the conversation. The elder Brown denied killing the dog. Appellant said that he or deceased killed him, or must have killed him. On the 9th of March appellant, in company with the two Campbell boys, Fayette and David, were en route to the town of Carbon on horseback, when they met deceased driving a wagon. Appellant asked Brown if he had killed his dog. Brown said, "What have you got to say about it?" Appellant said he "could whip the son of a bitch who killed his dog." Brown, the deceased, dropped his lines and told appellant to get off his horse, which he did. As soon as appellant alighted from his horse, deceased struck him on the head with a whip handle, and the parties engaged in the fight in the wagon. During the fight deceased had three knife wounds inflicted on him by appellant, from which he subsequently died. The parties separated, appellant going to Carbon, and deceased drove away. Deceased was met by his brother directly, who took charge of the wagon and drove it home; deceased dying about 30 minutes after the difficulty and before he reached his father's home, where he lived. The conviction was for murder in the second degree, with a punishment of ten years allotted to him in the penitentiary. The knife used in the difficulty was a pocketknife; no further description is given of the knife. It

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

161 S.W.—7

is also in evidence that, when deceased struck appellant on the head with the whip handle, appellant started towards the wagon, or attempted to get in the wagon, and deceased reached for and obtained a piece of iron, described as being a fishplate used in coupling railroad rails, and when he obtained this appellant says he stabbed or cut him with his knife. There was evidence pro and con that deceased had secured the piece of iron when cut. One of the Campbell boys testified practically as did appellant in regard to the difficulty. A brother of deceased was some 250 yards away, approaching the scene of the trouble, at the time it happened.

[1, 2] The court gave a charge on both degrees of murder, manslaughter, and self-defense. The charge on manslaughter is based upon the grounds: (1) An assault and battery causing pain or bloodshed; (2) a serious personal conflict in which great injury is inflicted by the person killed, by means of violence, etc.; (3) any condition or circumstance which is capable of creating and does create sudden passion, whether accompanied by bodily pain or not. The court says: "All of the above are deemed adequate causes. And where there are several causes to arouse passion, although no one of them alone might constitute adequate cause, it is for you to determine, from all the facts and circumstances in the case, whether or not all such causes combined might be sufficient to do so." Appellant requested an instruction submitting substantially manslaughter from the viewpoint of mutual combat. The testimony has been sufficiently stated in this connection; but, to restate, we find that the meeting was accidental. It is shown there was some feeling by appellant towards deceased on account of killing his dog, and it is shown he had threatened to whip him, or the man who did kill the dog. The father of the deceased, when asked by appellant, denied it. When appellant met the deceased, he asked him about it, and deceased said: "What are you going to do about it?" Appellant said he could whip the son of a bitch who killed his dog. Deceased said he would not take that and told appellant to get down from his horse. Appellant accepted, got off his horse, and the fight began by deceased striking appellant the first lick with a whip handle on the head. When deceased invited him into the difficulty, appellant accepted. This raised the question of imperfect self-defense viewed from the standpoint of an affray or mutual fighting. If he entered into the fight not for the purpose of killing, appellant could not be guilty, under the circumstances, of a higher grade of homicide than manslaughter. If it be viewed from the standpoint of appellant provoking the difficulty or provoking deceased to extend him an invitation by using the expression "son of a bitch," and if that was intended to provoke the difficulty and it was of no higher magnitude than an ordinary fight, and he was forced to kill under the circumstances detailed, from his viewpoint of it he still would not be guilty of a higher grade of homicide than manslaughter. Deceased struck the first lick with his whip handle. Appellant then got out his knife. Under those circumstances, we are of opinion the court should have given the requested instructions. The issue presented by the charge requested was in the case. If the jury had been told what the law was under those peculiar circumstances, and viewed from that standpoint, they might have convicted him of no higher grade of homicide than manslaughter. As it is, they gave him ten years for murder in the second degree. There is no evidence in the record of any threats except a whipping. Harris did testify that defendant said that he and his knife could whip the deceased, but his testimony was withdrawn from the jury, and it does not even appear in the statement of facts. It was error on the part of the court to refuse this requested instruction. Carter v. State, 37 Tex. Cr. R. 403, 35 S. W. 378; Delgado v. State, 34 Tex. Cr. R. 159, 29 S. W. 1070; Habel v. State, 28 Tex. App. 588, 13 S. W. 1001; Gray v. State, 55 Tex. Cr. R. 98, 114 S. W. 639, 22 L. R. A. (N. S.) 513; Branch, Crim. Law, § 468; Rose's Texas Notes, vol. 5, p. 1157.

There are some other matters arising with reference to impaneling the petit jury, as well as the refusal of continuance, which will not likely occur upon another trial.

For the errors indicated, the judgment is reversed and the cause is remanded.